## TEMPE DARROW ET AL. v. GEORGE R. SUMMERHILL ET AL.

### No. 823. Decided November 13, 1899.

**1. Surety—Injunction Bond—Subrogation—Judgment Lien.**

A surety upon a bond given to enjoin a judgment enforcing a vendor's lien, who, on dissolution of the injunction, has been compelled under his bond to pay off such judgment, is entitled to be subrogated to the vendor's lien to secure him in the amount so paid,—such lien still securing the debt, though its form had been changed from an obligation from the vendee to the vendor into one from the vendee to his surety. (P. 103.)

**2. Same—Assumption of Debt of Another.**

One who, assuming payment of a security debt of another, becomes liable therefor primarily, and without recourse upon such surety, is not entitled to such surety's right of subrogation to securities given by his principal to the creditor; but contra where the surety conveyed all his property to one undertaking to pay all his debts,— the grantee in such case being entitled, on payment, to all the rights of subrogation possessed by his grantor, for whom he occupies the attitude of a surety. (Pp. 103-105.)

**3. Same—Devisee.**

A devisee is substituted to all the rights of the devisor in connection with the property, including any right of the latter to subrogation, on discharging a debt to which the devised property was subject. (P. 105.)

**4. Subrogation—Implied Contract—Limitation.**

A right of subrogation to securities held by another, arising upon implied contract, is subject to the bar of two years limitation. (P. 105.)

**5. Same.**

Equity will not suspend the statutes of limitation in favor of one seeking subrogation to a lien; action in favor of such claimant must be brought within the statutory period. (P. 105.)

QUESTIONS CERTIFIED from the Court of Civil Appeals for the Fifth District, in an appeal from Bowie County.

*A. L. Beaty,* for appellants.—The principle of equity applicable is clear and well settled, and the first question certified can be answered only in the affirmative, Faires v. Cockrill, 31 S. W. Rep., 194; Taul v. Epperson, 38 Texas, 496; Harris' Law of Subrogation, secs. 290, 291, 162, 197; Sheldon on Subrogation, sec. 86; Pom. Eq., secs. 1211, 1419; 24 Am. and Eng. Enc. of Law, p. 194.

By the terms of the contract with John Peters, Mrs. Swoope did not assume any of his debts or liabilities except such as were then owing, nor was the estate conveyed to her charged with any others. Whether the injunction bond on which Peters was a surety, the injunction not having been dissolved at that time, can be considered as embraced in the expression, "all the just and lawful debts and outstanding liabilities now owing by the said John Peters," may admit of doubt. In other words, did the obligation become owing as to John Peters when the bond was executed or when the injunction was dissolved? If the latter, then the assumption did not extend to the injunction bond, and all possible difficulties growing out of the assumption vanish, and it is easy to apply general

and familiar principles which, besides being applicable to Mrs. Swoope, are conclusive in favor of Mrs. Darrow.

When one has been compelled to pay a debt which ought to have been paid by another he is entitled to a cession of all the remedies which the creditor possessed against that other. Sheldon on Subrogation, sec. 11.

The doctrine of subrogation is controlled by purely equitable principles. It does not depend upon priority or strict suretyship, but is the method which equity employs to compel the ultimate payment of a debt by him who in good conscience ought to pay it. Sheldon on Subrogation, sec. 11; Harris' Law of Subrogation, sec. 163.

The true principle is that when money due on a lien debt is paid it shall operate as a discharge of the lien or in the nature of an assignment of it, substituting him who pays in the place of the creditor, as may best subserve the purposes of justice. Bank v. Ackerman, 70 Texas, 315; Sheldon on Subrogation, secs. 11, 13.

This equitable doctrine, which is a particular application of the broad principle of subrogation, is enforced whenever the person making payment stands in such relation to the other parties that his interest, recognized either by law or by equity, can only be fully protected and maintained by regarding the transaction as an assignment to him and the lien as being kept alive, either wholly or in part, for his security and benefit. Pom. Eq. Jur., sec. 1211.

When one is required to pay the debt of another for the protection of his own property he is subrogated, regardless of whether he holds by onerous title, or by gift, devise or inheritance. 24 Am. and Eng. Enc. of Law, 257, 277-281; Sheldon on Subrogation, secs. 3, 5, 86, 93; Cole v. Malcolm, 66 N. Y., 363.

On the other hand, supposing it was the intention of the parties that Mrs. Swoope should assume the suretyship on the injunction bond and that the estate should pass charged with such suretyship, was the transaction, when considered in its entirety, such in equity as to cut off the right of subrogation? While it is well established as a general rule that the purchaser of property, who, as a part of the consideration of his purchase, directly assumes an incumbrance upon it, can not by payment become subrogated, still, the rule is by no means inflexible and there are many exceptions, as will appear from the adjudicated cases. A notable exception, observed in this State, is where the purchaser of property assumes a lien in ignorance of a junior incumbrance or a defect in the title. In such case he is upon payment held subrogated to the lien assumed. Murphy v. Smith, 50 S. W. Rep., 1040; Walker v. Lawler, 45 Texas, 532.

The rule is one of conscience. Its reason and justice are plain. There would be no equity in allowing subrogation to the ordinary purchaser of property upon discharging a lien which he had assumed as a part of the consideration of his purchase. The rule, being one of equity, must in each case depend upon the particular facts, and when a case

arises in which conscience demands an exception the courts will not hesitate.

Mrs. Swoope's assumption was not a direct and unconditional undertaking to discharge the lien against Summerhill's land in Texas. Her assumption, if any, was of the liabilities of Peters. His liability for the payment of the lien debt was a contingent one, dependent, first, upon the dissolution of the injunction, and second, upon the failure of the principal to pay. While Mrs. Swoope by her assumption may have become the principal obligor so far as Peters was concerned, she was nevertheless a mere surety as to Summerhill. Most certainly the latter could not have held her as his principal. She, although his surety without his request, was entitled to subrogation as against him. Sheldon on Subrogation, sec. 93.

In this case there was a clearly expressed intention on the part of Peters that Mrs. Swoope should succeed to his right of subrogation. In consideration of his natural love and affection and certain undertakings on her part, among which was the suretyship, he conveyed to her in express terms "all his goods, chattels, rights, credits, choses in action and possession, and any and all personal or mixed property," as well as all his lands. To go hand in hand with the suretyship assumed, he expressly bestowed upon her all his rights. .

Is this character of action governed by the two years statute of limitation? The only clause of article 3354 (the two years statute) which any one could contend to be applicable is section 4, referring to "actions for debt where the indebtedness is not evidenced by a contract in writing." This is not an action for debt, either technically or substantially. The object of the suit is to establish and foreclose a lien existing under the equitable rule of subrogation, and no personal judgment for debt is sought against anyone. The right under the particular circumstances to maintain the action in this form is undeniable. Solomon v. Skinner, 82 Texas, 345.

In Slaughter v. Owens, 60 Texas, 668, the Court held that the debt and lien must be enforced together, and in Flewellen v. Cochran, 48 Southwestern Reporter, 39, that in a suit to foreclose the lien the period of limitation to apply would be the one applicable to the debt. But these and other cases seeming to hold that the period applicable to the debt would control in the foreclosure are cases where the suit is primarily on the debt or could be maintained thereon.

If we had no statute of limitation applying to equitable actions this might be deemed so analogous to an action of debt as to be governed by the same rule. But our statutes cover the whole field and include suits of equitable as well as of legal cognizance. By article 3358 it is provided that all actions for which no time is elsewhere mentioned in the statutes shall be brought in four years.

Not every action the object of which is the collection of a debt can be deemed an action for debt. A suit to have a trustee appointed under the terms of a deed of trust might have for its sole object the collection

of a debt, yet the suit could be maintained though the debt was actually barred. Converse v. Davis, 39 S. W. Rep., 277. The statute would undoubtedly commence to run in such case when the occasion for the appointment arose and the general four years clause would apply.

The debt had been kept alive and continuously in force against the surety and those holding his estate, and under all the authorities appellant became subrogated to the judgment itself and there was no limitation as to her until the payment was made in 1894. Rev. Stats., art. 3815; Faires v. Cockrill, 31 S. W. Rep., 194; Beck v. Tarrant, 61 Texas, 403; Harris' Law of Subrogation, secs. 848, 850; Wood on Lim., sec. 245; 24 Am. and Eng. Enc. of Law, 323; Angel on Lim., sec. 131; Brandt on Suretyship, secs. 120, 259; Bennett v. Cook, 45 N. Y., 276; Scott v. Nichols, 61 Am. Dec., 503.

In this State a lien for the purchase price, retained in a deed for land, exists and may be enforced so long as the debt is kept alive and enforceable as a personal demand, and the debt may be so kept alive by suits, renewals, or extensions between the debtor and creditor, regardless of the fact that the land may have passed into the possession of third parties. The crucial test is whether the debt, as a personal demand, is alive or has become barred by limitation. A purchaser can not claim that the lien against the land is barred so long as the debt is not barred as against the debtor. Slaughter v. Owens, 60 Texas, 668; Beck v. Tarrant, 61 Texas, 402; Summerhill v. Hanner, 72 Texas, 226; King v. Brown, 16 S. W. Rep., 39; Flewellen v. Cochran, 48 S. W. Rep., 39; Association v. Newman, 25 S. W. Rep., 464; Ball v. Hill, 48 Texas, 634; 2 Jones on Mort., 3 ed., sec. 1207.

The following authorities sustain the proposition that the statute would not run against the debt, the personal demand, so long as the injunction was pending: Summerhill v. Hanner, 72 Texas, 226; 1 High on Injunc., 2 ed., 87; Wood on Lim., sec. 243; Work v. Harper, 66 Am. Dec., 549; Marshall v. Minter, 43 Miss., 678; Lamb v. Ryan, 40 N. J. Eq., 67; Kelly v. Donlin, 70 Ill., 381; Treasurer v. Martin, 33 N. E. Rep., 1113; Sugg v. Thrasher, 30 Miss., 141; Davis v. Hoopes, 33 Miss., 173.

*R. L. Henry* and *C. A. Culberson,* for appellees.—The first question certified is purely an abstract one. Besides, its correct determination would depend so much upon several facts which in the very nature of things have not been and could not be certified, particularly when and under what circumstances Peters paid the judgment, that this court can not decide it except incidentally under the second and third questions. The same suggestion applies in a large degree to the second question, because Mrs. Swoope only paid $1000 on the judgment. Cleveland v. Carr, 38 S. W. Rep., 1123; Darnell v. Lyon, 85 Texas, 459.

The claim against the property and estate of John Peters, when sought to be enforced, had been lost, and its alleged payment by Mrs. Swoope and Mrs. Darrow was as volunteers and gave them no right to proceed

against the land in this State in subrogation. (1) Peters being dead when the certificate of the register was filed with the clerk on October 27, 1880, the judgment thus entered against him was under the law of Alabama absolutely void and not merely voidable as in some other States. Hood v. Bank, 9 Ala., 335; Powell v. Washington, 15 Ala., 806; Meyer v. Hearst, 75 Ala., 390. (2) Peters was a party to the suit and upon his death in 1869 the action abated as to him under the statute of Alabama above cited, and not having been revived as therein provided against his legal representative, his successor, or party in interest, the claim against his estate was lost. The general rule as to parties is that when the principal of a bond binds himself to perform the order of the court, his sureties by executing the bond become parties to the record. Hawes, Parties to Actions, sec. 1; Dickinson v. Trout, 8 Bush, 443; Green v. Huey, 23 La. Ann., 704. Interpreting section 2146, Code of Alabama, in force in 1859, and substantially the same as the present section 2908, the Supreme Court of Alabama said: "Under these rules it is manifest that upon the death of Mr. Elston this suit abated as to him." Rupert v. Elston, 35 Ala., 85. In a very late case section 2908, Code of Alabama, has been directly construed. Evans v. Welch, 63 Ala., 254. The claim against the estate of Peters being thus lost and destroyed as a subsisting debt, the right of subrogation does not exist. Watson v. Rose, 51 Ala., 292. "Legal representative," within the meaning of this statute, is the executor or administrator. Schouler, Executors, sec. 2; 2 Bouv. Law Dic., "Representatives;" Alexander v. Barfield, 6 Texas, 400.

So, too, when Mrs. Swoope and Mrs. Darrow paid or satisfied the judgment in 1881 and 1894, respectively, the claim against the estate of Peters was barred by the statute of limitations of ten years of both Alabama and Texas, because the injunction suit in Alabama was never revived against his legal representative, successor, or party in interest, nor was any independent action ever instituted against them either on the judgment or on the injunction bond. If measured by the law of this State and not the statute of Alabama, the same conclusion follows, inasmuch as it is not shown that there was no administration on the estate of Peters or need of any or that it was insolvent. Solomon v. Skinner, 82 Texas, 345; Low v. Felton, 84 Texas, 385.

Being under no legal obligation to pay the void judgment rendered against Peters after his death, and, besides, any claim against his estate on the bond or judgment being barred by limitation as above shown, the voluntary payment made by Mrs. Swoope and Mrs. Darrow was at their peril, and they can not assert or enforce a lien upon the land in this State. Oury v. Saunders, 13 S. W. Rep., 1030; Fievel v. Zuber, 67 Texas, 275; Sheldon on Subrogation, sec. 110, note 5; Id., sec. 176, note 2; Printed argument for appellants, page 7; 7 Am. and Eng. Enc. of Law, 2 ed., 349, note 5.

If the court shall hold that the claim against the estate of Peters was not lost, then Mrs. Swoope, having expressly assumed and promised to.

pay the debts and liabilities of Peters out of funds transferred to her by him, is not entitled to the remedy of subrogation, nor is Mrs. Darrow, who accepted the property, charged with the same obligation.   The right of subrogation, as thus claimed, does not exist, it is submitted, because Peters had no connection whatever with the third note given for the land or the judgment thereon, and said judgment and supposed lien arising therefrom formed no part of any contract between Peters and his principal, Horace Summerhill, and neither the judgment on the land note nor the supposed lien on the Bowie County land were securities for the payment of the injunction bond or the judgment of which it had the force and effect, to which alone Peters was a party.   Faires v. Cockerell, 88 Texas, 436; Sheldon on Subrogation, sec. 242; Swan v. Patterson, 7 Md., 164.

The right of subrogation does not arise, furthermore, under these facts, upon the well established rule that, these people having agreed in effect to pay off and discharge the debt of Peters, they can not be subrogated.   The debt became their debt.   Harris on Subrogation, secs. 2, 30, 150, 151; Sheldon on Subrogation, secs. 46, 47, 52, 240; Pom. Eq. Jur., secs. 797, 1213; Wilson v. Burton, 52 Vt., 394; Heim v. Vogel, 69 Mo., 529; McCabe v. Swap, 14 Allen, 188; Campbell v. Hamilton, 39 S. W. Rep., 898; Huyler v. Atwood, 26 N. J. Eq., 504; Crawford v. Edwards, 33 Mich., 354; Birke v. Abbott, 103 Ind., 5; Goodyear v. Goodyear, 72 Iowa, 329; Martin v. Aultman, 80 Wis., 150; 24 Am. and Eng. Enc. of Law, p. 192, note 8; Kellogg v. Colby, 83 Iowa, 513.

This question is settled by the Supreme Court of Alabama, where this case arose, and by the laws of which it should be determined.   Turner v. Teague, 73 Ala., 554.

In another view, although it is insisted that Mrs. Swoope and Mrs. Darrow paid the $7000, this money was paid out of the funds of Peters transferred to the former expressly charged with this payment.   It was therefore in equity and good conscience paid by Peters himself, the debt was extinguished so far as Mrs. Swoope and Mrs. Darrow were concerned, and was not the subject of subrogation.   Sheldon on Subrogation, secs. 52, 56; Birke v. Abbott, 103 Ind., 10.

It is not set out or claimed in the pleadings of appellants that by the use of the word "rights" in the deed of March 27, 1867, John Peters conveyed to Mrs. Swoope the right of subrogation, but it is there alleged that subrogation arises solely because of the payment of the judgment.

The transfer of Peters was in law and equity made with reference to the well-known principle that when property is acquired with the express promise on the part of the vendee to discharge an incumbrance thereon the vendee becomes the original obligor and subrogation does not arise and the use of the term "rights" does not affect it.   In order to have done so the language and intention to that effect must have been clear and unequivocal, whereas the language employed is that ordinarily used in such instruments.

The deed of March 27, 1867, from John Peters to Mrs. Swoope transferred "all and singular the goods, chattels, rights, credits, choses in action and possession, and all personal or mixed property now owned by or belonging to the said John Peters." It is not only clear, looking to the entire transaction, that there was no purpose to convey such right, upon which Peters was probably in ignorance, but the language used shows is was not done. No right of subrogation then existed, in any view of the case, nor could it arise until Horace Summerhill made default in payment and John Peters paid the debt for him. The right was not in esse. Sheldon on Subrogation, sec. 5; Harris on Subrogation, sec. 5; 2 Dev. on Deeds, sec. 856; Lamb v. Kamm, 1 Sawyer, 238.

It is thoroughly settled that the statute of limitation of two years applies to this action. Rev. Stats., art. 3354; Faires v. Cockerell, 88 Texas, 437; Harris on Subrogation, secs. 830, 833; Sheldon on Subrogation, sec. 110; Britt v. Pitts, 111 Ala., 405.

In the case stated in the fifth question, equity will not preserve the lien. Code, Alabama, on Limitations (cited in certificate); Rev. Stats., arts. 3354, 3359; Sheldon on Subrogation, p. 161, note 3; Id., secs. 6, 86; Wood on Lim., pp. 9, 10; Slaughter v. Owens, 60 Texas, 668; Beck v. Tarrant, 61 Texas, 402; Wynne v. Willis, 76 Texas, 591; Ward v. Green, 88 Texas, 182; Teague v. Corvitt, 57 Ala., 529; Davis v. Andrews, 88 Texas, 524; Walker v. Smith, 8 Yerger, 241; Walsh v. McBride, 72 Md., 55; Bank v. Dalton, 9 How. (U. S.), 529.

BROWN, ASSOCIATE JUSTICE.—The Court of Civil Appeals for the Fifth Supreme Judicial District has certified to this court the following statement and questions:

"In 1858, James Park, of Tennessee, conveyed to Horace Summerhill, of Alabama, a tract of land in Bowie County, Texas. The consideration for said conveyance was $10,000, evidenced by three promissory notes executed by said Summerhill in favor of said Parks and for equal amounts, payable in one, two, and three years, respectively. A lien was expressly retained in said conveyance to secure the payment of said notes. In 1862, the last note being due, said Park recovered a personal judgment thereon in the Circuit Court of the State of Alabama against Horace Summerhill for the amount then due on said note. Various executions were issued on said judgment and returned unsatisfied. In 1866 another execution was issued and levied on certain land in Lauderdale County, Alabama, as the property of said Horace Summerhill. Said Summerhill sued out a writ of injunction seeking to enjoin said judgment. The bill for injunction was filed on August 29, 1866, and upon order of the chancellor the writ of injunction was, after the complainant had entered into bond, issued by the register in chancery, restraining and enjoining said sheriff from further proceeding to execute the writ of fieri facias then in his hands, or any process from the Circuit Court of said county founded on said judgment, and the execution was on said date returned, 'Staid by injunction.' The injunction bond

given by said Horace Summerhill was signed by John Peters and Geo. R. Summerhill, as sureties.

"1. The conditions of said injunction bond conformed to the requirements of the Alabama code, which is as follows, to wit: Sec. 3869. 'No injunction must be issued to stay proceedings after judgment, in a personal action, until the party at whose application the writ issued gives bond and security in double the amount of such judgment, payable to and approved by the register, conditioned on the dissolution of such injunction, to pay the amount of the judgment enjoined with interest, and also such damages and costs as may be decreed against such party.' Sec. 3876. 'A bond to enjoin proceedings at law on a judgment for money, upon the dissolution thereof, in whole or in part, either upon an interlocutory or final decree, has the force and effect of a judgment; and being certified by the register to the clerk of the court in which the judgment was rendered, execution may issue against any or all the obligors thereto, for the amount of such judgment which has been enjoined, interest, and the damages decreed.'

"Subsequent to the institution of said injunction proceeding in 1866, James Park died. Said proceeding was continued against his executors. Said injunction remained in full force and effect until April 3, 1880, and final judgment was rendered dissolving the injunction and dismissing the writ. The register in chancery thereupon, on October 27, 1880, in accordance with the laws of Alabama, certified this final decree to the clerk of the Circuit Court with direction to issue execution against the complainant and G. R. Summerhill and John Peters, sureties on the injunction bond.

"On March 27, 1867, John Peters executed a conveyance to his niece, Elizabeth T. Swoope, wife of Jacob K. Swoope, conveying to her all of his property, in which the following provisions appear: 'For and in consideration of the natural love and affection he has and bears to his niece, the said Elizabeth T. Swoope, the wife of Jacob K. Swoope, as aforesaid, has given, granted, bargained, sold, and by these presents do give, grant, bargain, and sell to the said E. T. Swoope, all and singular, the goods, chattels, rights, credits, choses in action, and possession and any and all personal or mixed property now owned by or belonging to the said John Peters, and also all of the real estate situated and being in the county of Lauderdale, and State of Alabama, now belonging to the said John Peters, consisting in part of the plantation known and bounded as follows: [Then follows description of divers plantations and tracts of land] together with any and all other lands of any or whatever description now belonging to said John Peters, situated and lying in the county of Lauderdale aforesaid, * * * to have and to hold all of said estate, real, personal, and mixed, unto her, the said Elizabeth T. Swoope, as her separate estate; * * * but it is another and further consideration moving the said John Peters to execute this deed of indenture, and it is hereby declared a charge upon the separate estate of the said Elizabeth T. Swoope, conveyed to her by

this deed, that the said Jacob K. Swoope and Elizabeth T. Swoope do assume and pay out of said separate estate of the said Elizabeth T. Swoope conveyed to her as aforesaid, all of the just and lawful debts, and outstanding liabilities now owing by the said John Peters, to any and all persons whomsoever, and that they, said Jacob K. Swoope and Elizabeth T. Swoope, his wife, do provide for the comfortable support and maintenance of the said John Peters during his natural life, by paying to the said John Peters out of the separate estate of the said Elizabeth T. Swoope here conveyed, the sum of $2000 on the 1st day of January, 1868, and the same sum of $2000 on the first day of each year thereafter so long as the said John Peters shall live and no longer, it being the intent of this instrument that the payment of the said annual sum shall cease with the natural life of the said John Peters, and that the said Jacob K. Swoope and Elizabeth T. Swoope are in no way to be accountable to the heirs or personal representatives of the said John Peters after his death for the payment of any portion of the said sum of $2000 per annum that shall remain unpaid at the time of his decease.' John Peters died in 1869. The record before us does not disclose that his death was suggested in the action in which the injunction bond was given nor that any action was taken to revive his liability upon the injunction bond against his legal representatives. The facts stated in the original certificate show all the steps taken to enforce liability on the injunction bond so far as they are made to appear by the record.

"In 1881, Jas. P. Hanner, as executor of James Park, filed a bill in equity in the Chancery Court of Lauderdale County, Alabama, against Elizabeth T. Swoope, whose husband was then dead, seeking to charge the land acquired by Mrs. Swoope from John Peters with liability for the judgment of Park against Summerhill by reason and force of the injunction bond executed by John Peters as surety aforesaid. This cause was continued from term to term, and in 1890 Mrs. Swoope died leaving a will, by which, after certain special devises and bequests, she bequeathed the rest and residue of her estate to her only daughter and heir, appellant. Tempe Darrow, who was referred to by name in the will as 'Tempe Swoope Darrow;' also as 'My only daughter and heir.' Said will recited: 'I hereby appoint my brother, Mark R. Haley, and my son-in-law, Geo. M. Darrow, to be executors of my last will and testament.' After her death the suit against her was revived against her executors, and was finally settled on July 30, 1894, by appellant, Tempe Darrow, paying the sum of $6000, Mrs. Swoope having on May 1, 1881, in her lifetime, paid $1000 on said claim. Mrs. Darrow also paid the cost of suit, amounting to $110.19. The value of the land received by Mrs. Swoope from John Peters was of the value of $75,000. The property received by Tempe Darrow as residuary devisee of her mother, Mrs. Swoope, was of the value of $35,000 and was a portion of that conveyed by John Peters to Mrs. Swoope, and the amount paid by Mrs. Darrow in settlement of the suit of Hanner, executor, v. Elizabeth T. Swoope, was out of property which she had received as residuary devisee of her

mother's will.  At that time, the estate of Mrs. Swoope had been wound up and settled and the residue delivered to Mrs. Darrow according to the will.  This suit was about to be further prosecuted against Mrs. Darrow when the settlement was made, and she paid the $6000 as a full and complete compromise and settlement of the judgment of the Circuit Court in favor of Park against Summerhill and all claims thereunder in all respects and against all persons whomsoever.  She has never been reimbursed for the amount so paid nor any part thereof.  The suit in which this controversy arises was originally instituted by Fannie Caudle against Geo. R. Summerhill, F. M. Henry, and Rebecca E. Amis, April, 1896, who are alleged to be in possession of the land here in controversy; the object of the suit being to foreclose a lien on the land for a balance alleged to be due on the judgment recovered by James Park against Horace Summerhill in the Circuit Court of Lauderdale County, Alabama, heretofore mentioned.  It is further alleged that said lien existed by reason of the sale of said land to Horace Summerhill by James Park, a part of the consideration for which was a note which was the foundation of said judgment.  Tempe Darrow, joined by her husband, Geo. M. Darrow, intervened in said suit January 25, 1898, claiming that she had paid off said judgment, and asked that she be subrogated to said lien and that said land be subjected thereto, etc., and her right to subrogation is the question involved in this controversy.

"On May 8, 1876, Horace Summerhill deeded 700 acres of this land to his son, Geo. R. Summerhill, reciting a cash consideration of $5000, but the true consideration was some $5000 which Geo. R. Summerhill had previously paid on debts which his father owed.  On February 8, 1877, Horace Summerhill deeded another 700 acres of this land to his daughter, Rebecca E. Amis, reciting a cash consideration of $5000, and, further than the recital in the deed, the evidence failed to disclose what the consideration was.  Prior to this, in 1873, Horace Summerhill deeded to his son, Wm. H. Summerhill, the other portion of the land, being 700 acres, reciting in said deed a cash consideration of $5000, but the true consideration was some $8000 or $10,000 which said Wm. H. Summerhill had previously paid on debts which his father owed.  F. M. Henry obtained an interest in the land and the land is now held by said Geo. R. Summerhill, Rebecca E. Amis, and F. M. Henry, they having acquired the interest of Wm. H. Summerhill.  They acquired same with the full knowledge of the reservation of the lien in the deed from James Park to Horace Summerhill, to secure the purchase money for the same.  From the time Tempe Darrow made said settlement and payments till the bringing of this suit about three years and eight months had elapsed.

"2.  Horace Summerhill lived in Lauderdale County, Alabama, at the time judgment was rendered in favor of said Parks against him by the Circuit Court in and for said county and State, and he lived there until his death, which occurred December 26, 1886.  At his death he owned no property and there has been no administration on his estate.

"The statutes of limitation of Alabama pertinent to the issues in-

volved herein are as follows: Sec. 3247: 'When the commencement of an action is stayed by injunction or statutory prohibition, the time of the continuance of the injunction or statute prohibition is not computed as part of the time.' Sec. 3250: 'When the United States is at war with a foreign country, and either party to a contract is a subject or citizen thereof, the time of the continuance of the war is not computed as a part of the time limited for the commencement of the suit.' Sec. 2908: 'No action abates by the death or other disability of the plaintiff or defendant, if the cause of action survive or continue; but the same must, on motion, within eighteen months thereafter, be revived in the name of or against the legal representatives of the deceased, his successor, or party in interest; or the death of such party may be suggested upon the record, and the action proceed in the name of or against the survivor.' Sec. 3248: 'A disability which did not exist when the cause of action accrued does not suspend the operation of limitation unless the contrary is expressly provided.'

"It was provided by the Code of Alabama that 'actions upon a judgment or decree of any court of Alabama, of the United States, or of any State or territory of the United States may be commenced in twenty years after the cause of action has accrued and not afterwards, that actions founded upon any contract of writing under seal may be brought within ten years, and actions founded upon a promise in writing not under seal or actions arising from simple contracts may be brought within six years after the cause of action accrues.'

"Under the state of facts above related, these questions arise and are here propounded.

"1.   Did John Peters, by becoming a surety upon the injunction bond of Horace Summerhill, occupy such a relation to the judgment based on the vendor lien note as would have given him the right of subrogation to the vendor's lien upon the land in favor of Park, had he, Peters, paid the judgment?

"2.   If such right of subrogation would have existed in favor of Peters, under such conditions, then, after he conveyed all his estate to his niece, Mrs. Swoope, under the circumstances and conditions stated, did she occupy the same or as favorable attitude as Peters in regard to the matter of subrogation to the vendor's lien originally in favor of Park?   Or, in other words, was she a volunteer, or did her assumption of all the debts and liabilities of said Peters, and the agreement to pay him the sum of $2000 a year so long as he should live, for his support, have the effect to prevent the right of subrogation in her on payment of such judgment?

"3.   If it should be determined that Peters would have had the right of subrogation under the conditions stated, and that Mrs. Swoope occupied as favorable position after the conveyance by Peters of all his property to her, then did Tempe Darrow occupy a like position after the death of Mrs. Swoope, Mrs. Swoope having devised all of the Peters property to Tempe Darrow, and would she, Tempe Darrow, be entitled

to subrogation to the vendor's lien in favor of Park, upon payment of his judgment against Summerhill?

"4. If the previous questions should be answered favorably to the claim of subrogation asserted in this suit by Tempe Darrow, then the further question arises, what period of limitation, two or four years, would apply to her right to enforce by suit such right of subrogation?

"5. If the right of subrogation would exist under the conditions stated, would equity preserve the life of the judgment in favor of Park against Summerhill for the purchase money of the land, and the vendor's lien securing the same, beyond the period when it would be barred by limitations, for the purpose of such subrogation?"

We answer the first question, if Peters had paid off the judgment in favor of Park against Summerhill in discharge of the injunction bond upon which Peters was surety, he would have been entitled to subrogation to the vendor's lien upon the land to secure him in the sum that he paid in discharge of the judgment. Cannon v. McDaniel, 46 Texas, 303; Slaughter v. Owens, 60 Texas, 668; Beck v. Tarrant, 61 Texas, 402; King v. Brown, 80 Texas, 276; Mustain v. Stokes, 90 Texas, 358.

Under the statute of Alabama, the bond upon which Peters was surety for Summerhill was conditioned that the obligors should pay the amount of the judgment enjoined, and, upon the dissolution of the injunction, the bond operated as a judgment against the obligors and authorized the issuance of execution for the amount of the judgment, interest and costs. The sum to be paid was that mentioned and secured by the judgment of Park v. Summerhill, which was for the amount of the debt secured by the note given by Summerhill to Park for a part of the purchase money of the land. The money secured by the injunction bond was part of the debt contracted in the purchase of the land, although it had assumed different forms.

In the case of Slaughter v. Owens, cited above, the court said: "There is no principle better settled than that the vendor's lien secures the debt contracted for the purchase money and not merely the note by which such debt is evidenced. This note may be substituted by another or it may pass into judgment, still the lien will attach to the new security, for that is but evidence of the original indebtedness. Hence, when judgment was obtained upon the note given by Lee and Calvert, that judgment carried with it the vendor's lien which originally secured the note itself. * * * We think the lien followed the debt, even to the judgment obtained upon the note given for the purchase money, and, as that was not barred, limitation had not deprived the plaintiff of remedy against the purchaser of the land."

To the second question we answer, that if Mrs. Swoope assumed the payment of the judgment in favor of Park against Summerhill so as to make her primarily liable and to give her no right of action against him, a payment made by her would have operated as an extinguishment of the debt, and, having no right of action against Summerhill for the debt, there could be no subrogation to the creditor's lien. Douglass v.

Fagg, 8 Leigh, 588; Goodyear v. Goodyear, 72 Iowa, 329; Kellogg v. Colby, 83 Iowa, 513.

The recital in the conveyance from Peters that Mrs. Swoope assumed the liability of Peters became her contract when she accepted the conveyance, the same as if it had been written separately and signed by her. Crawford v. Edwards, 33 Mich., 354. The question to be determined is, did the contract constitute Mrs. Swoope the principal in the debt as between herself and Summerhill, or did it give her the standing of a surety for Summerhill instead of Peters, whose place she took?

The injunction bond was a liability of Peters contingent upon the dissolution of the injunction and upon a failure of Summerhill to pay. Mrs. Swoope assumed that, and, if it be held that she became the principal in the debt, a greater responsibility will be cast on her than rested upon Peters. But she assumed only so much as Peters was liable for and became the surety of Summerhill, liable to pay the judgment if the injunction should be dissolved and he should fail; and if she had made payment, it would have discharged a debt of her principal in which she would not be a volunteer, for she and her property were bound for it. She would have a right to recover from Summerhill the sum paid, and, to secure reimbursement, would be subrogated to the vendor's lien. McDaniels v. F. B. M. Co., 22 Vt., 274; Rittenhouse v. Levering, 6 Watts & Serg., 190; Ellwood v. Deifendorf, 5 Barb., 398; Rodgers v. M'Cluer, 4 Gratt., 81; Leake v. Ferguson, 2 Gratt., 419.

By the conveyance, Peters vested the title to the property in Mrs. Swoope, and, if she had paid the judgment as between her and Peters, it would have been the discharge of her own debt with her own property. He would have had no right to recover against Summerhill. If she had done what he agreed to do, no sound reason can be given why she should not be subrogated to all of the rights that Peters would have had if he had paid under the same circumstances.

In the case of McDaniels v. F. B. M. Co., before cited, one Clark and other persons, stockholders in a company, became sureties upon its notes, secured by mortgage upon real estate. The other sureties conveyed to Clark their stock, and, in consideration of the conveyance, he assumed their liability upon the notes. Afterwards, to secure the original notes, Clark gave a collateral note with McDaniels as his surety. Clark became insolvent and McDaniels was compelled to pay the notes of the company. He sued the company for the amount paid, claiming subrogation to the mortgage. The court said: "The right of John M. Clark to keep this mortgage on foot will no doubt depend, then, essentially upon the effect of the contract by which he undertook to pay the debts of the corporation and this among them. If this made the debt essentially his own debt as between himself and the corporation, so that he became principal and they but sureties, then, upon paying it, either by himself or his sureties, he could not set it up or keep it on foot against his sureties. But we are not prepared to say that the contract of the 8th of February, 1843, can or ought to be so construed as to have such

effect. It seems, in terms and in fact, to be nothing more than an arrangement among the sureties by which John M. Clark, in consideration of the assignment of certain stock from the other sureties, undertook to save them harmless from all their liabilities on behalf of the corporation. After this, upon payment of the note, he clearly could not set it up against them or their property, had that been mortgaged for the payment; nor could his surety or the assignee of such surety. But, as to the corporation, he was still but a surety. He had received no consideration from them to pay this debt nor had he bound himself to pay it for them. If he had suffered the real estate to go upon the mortgage to Delano, the company could not complain; and having paid, he may now keep it on foot and so may his surety or the plaintiff who stands in his place. It is clear, then, that the plaintiff may recover against the corporation." The other cases cited support this and we think the reasoning unanswerable. Mrs. Swoope became simply a substitute for Peters as surety for Summerhill, and, upon payment of the debt, would have been entitled to be subrogated to the vendor's lien.

Mrs. Darrow received the property from Mrs. Swoope as her devisee and was substituted to all of her rights in connection therewith. We therefore answer the third question, that Mrs. Darrow was entitled to be subrogated to the lien in favor of Park to secure the amount that she paid upon the judgment.

To question fourth, we reply that Mrs. Darrow's right of action was upon the implied contract arising between herself and Summerhill, which was not evidenced by writing and is subject to the bar of two years' limitation. Rev. Stats., art. 3354, subdiv. 4; Faires v. Cockerell, 88 Texas, 428.

We answer the fifth question, that equity will not suspend the statute of limitations in favor of one who seeks subrogation to such lien. Action upon the debt must be brought within the statutory period. Rittenhouse v. Leavering, cited above. There is no reason why Mrs. Darrow should not have brought her suit to enforce her rights in this instance that would not apply with equal force to a suit against Summerhill if he were living. The purchasers from Summerhill have the right to plead against the debt sought to be enforced, the period of limitation which Summerhill could plead if he were living and a party to the suit, and the same period of limitation must apply in the one case as in the other. McKeen v. James, 87 Texas, 193; Cason v. Chambers, 62 Texas, 305.