**DOWNING et al. v. JEFFREY et al.**

**No. 11459.**

Court of Civil Appeals of Texas.
Galveston.

April 14, 1943.

Rehearing Denied July 8, 1943.

W. C. Hancock, of Pittsburg, Wm. W. Harris, of Quitman, Edwin M. Fulton, of Gilmer, and Turner, Rodgers & Winn and Frank J. Scurlock, all of Dallas, for appellants.

Jones & Jones, of Mineola, for appellees.

CODY, Justice.

This is a formal trespass to try title suit brought by appellants against appellees to recover an undivided half interest in a certain tract of land in Wood County, upon

which oil has been discovered. Appellants have confessed in this court that the judgment of the trial court in so far as it was against them and in favor of the Stanolind Oil & Gas Company ought to be affirmed; therefore, in so far as the Stanolind Oil & Gas Company is concerned, the judgment is affirmed without further discussion; the remainder of this opinion will deal with this appeal on the basis that appellee Jeffrey is the sole appellee concerned herein. Appellee answered said trespass to try title suit by a general denial, a plea of not guilty, a plea of the four year statute of limitations and pleas that he had acquired title by adverse possession under the three, five and ten year statute of limitations.

At the conclusion of the evidence, both the appellants and appellee moved for an instructed verdict. The court granted the motion of appellee and denied appellants', and rendered judgment that appellants take nothing. Appellants seek to reverse said judgment, and have it here rendered in their favor, upon these points:

First: The court erred in directing a verdict on the theory that appellee acquired title by adverse possession.

Second: The court erred in directing a verdict on the theory that appellee was a bona fide purchaser for value without notice of the rights and title of appellants.

Third: The court erred in not directing a verdict for appellants against appellee.

Fourth: Appellant H. S. Downing is not estopped to recover by reason of his witnessing his father's assignments of the Federal Land Bank stock to appellee in the year 1939.

On November 6, 1916, while the mother of appellants, who was the wife of their father, H. F. Downing, was alive, the said H. F. Downing acquired the legal title to the land in controversy from Mrs. G. E. Farmer et vir. The mother of appellants was not named in the deed to H. F. Downing, and consequently acquired only an equitable estate in said land. She died intestate in February, 1917, and her husband (the father of appellants) remarried in the following July. On January 23rd, 1922, H. F. Downing, joined by his second wife, reconveyed the land to Mrs. G. E. Farmer. In addition to the cash consideration, Mrs. G. E. Farmer et vir executed three vendor's lien notes, each for $200. She was an innocent purchaser for value. Thereafter, on November 18, 1922, H. F.

Downing assigned the unpaid balance of said notes, amounting to $570 to the Federal Land Bank, together with the vendor's lien and superior title securing its payment. Upon the same day that H. F. Downing assigned said unpaid notes to the Federal Land Bank, Mrs. G. E. Farmer et vir executed their note to the said Land Bank in the sum of $600, which, to the extent of $570, was given in renewal and extension of the balance of aforesaid vendor's lien notes, and the balance of said $600 note represented money advanced to pay for the Bank stock incidental to the loan. To additionally secure the $600 note, Mrs. G. E. Farmer et vir executed a deed of trust.

Thereafter, on September 20, 1923, Mrs. G. E. Farmer et vir conveyed the aforesaid land to Will. Lowe, upon the consideration, among other things, of his assumption of the payment of the note for $600, payable to the Land Bank, and his execution and delivery of four promissory vendor's lien notes, each for $250. A vendor's lien was retained in the deed to Lowe to secure the payment of the notes totaling $1,600. Thereafter, the Land Bank acquired title note No. 2 of the series of notes executed by Will Lowe, on which there remained unpaid a balance of $190, and the said Lowe executed a note for $200, being to the extent of $190 in renewal and extension of aforesaid vendor's lien note, and being to the extent of the balance thereof given for money advanced to buy Land Bank stock incidental to the loan. At this point we recapitulate the following facts: While the title to the property stood in Will Lowe, the equitable title of appellants was cut off because both he and his vendor were innocent purchasers for value. And the Federal Land Bank held, as an innocent purchaser for value, the superior title to and a vendor's lien on said land, securing the payment of $800.

On December 4, 1930, Will Lowe conveyed the land to H. F. Downing, the father of appellants, upon the consideration, among other things, that he assume the payment of the unpaid portion of the aforesaid Federal Land Bank loans. Thereupon the equitable title of appellants to an undivided half interest in the land revived, subject, of course, to the right of the Federal Land Bank to hold as an innocent purchaser for value the superior title to the entire undivided interest in the land to secure the payment of its notes. Walling

v. Rose, Tex.Civ.App. 2 S.W.2d 352, 355, 356 and authorities there cited.

On November 28, 1934, H. F. Downing, joined by his second wife, conveyed by general warranty deed the aforesaid land to appellee upon the consideration of the down payment of $100, the execution of three notes totaling $400 and the assumption by appellee of the payment of the Federal Land Bank loans secured thereby, then amounting to $584. It is undisputed that appellee had no actual knowledge that appellants had any right to said land, but it is equally undisputed that appellant H. S. Downing was residing upon said land with his family, farming it, and that no one else was living thereon. But it is appellee's contention that the only tenable inference which could be drawn from the facts is that he was in possession as the tenant at will of his father, H. F. Downing, and that his possession affected appellee only with notice that he was claiming the rights of a tenant at will of H. F. Downing, and not that he was a tenant in common with him, and with the rest of appellants.

At this point it is proper to set down the facts that appellee moved into the vicinity of, and first became acquainted with, the land in controversy, in the year 1925, when it was owned by Lowe. It is undisputed that appellee knew H. F. Downing was the father of appellants, but it is likewise undisputed that he did not know Downing had been twice married, and that he did not know appellants were his children by a former marriage. Appellee knew that appellant H. S. Downing was in actual possession of the land in question, and farming it, and was told by said appellant's father that said appellant would move off as soon as a house which was being prepared for him was completed. Appellee did not ask appellant H. S. Downing by what right he was in possession of said land and accepted the representation of the father, H. F. Downing, that appellant H. S. Downing would move off the land when he accepted the deed. A short time after appellee accepted the conveyance of the land, appellant H. S. Downing did move off the land. H. S. Downing at no time before the filing of this suit in 1941, which was after oil was discovered on the land, ever told appellee that he owned or claimed to own any interest in the land. Indeed, appellant H. S. Downing, on the 15th day of October, 1939, signed as a witness two assignments of National Farm Loan Association stock which was taken out in connection with aforesaid two loans obtained from the Federal Land Bank, one of which reads as follows:

"Assignment of National Farm Loan
Association Stock.

"Loan No. 23539 through the Hawkins N. F. L. A.

"Having sold the land in Wood County, Texas, on which the Federal Land Bank of Houston holds a mortgage, for value received, I hereby assign to Sam Jeffrey, the purchaser of the land, whose post office is Hawkins, the stock owned by me in the Hawkins National Farm Loan Association now held by the Association as collateral for the payment of the above loan. * * *

"(Signed)   H. F. Downing.
"Witnesses:
"H. S. Downing."

The assignment of the Association stock in connection with the other loan was in like language, and likewise witnessed by appellant H. S. Downing.

Appellee did not have the abstract of title examined, but it is undisputed that he asked H. F. Downing for such abstract and was informed by him that it was in the possession of the Federal Land Bank, which held a vendor's lien against the land, and H. F. Downing assured appellee that if the title was not good the Land Bank would not have taken a lien thereon. Appellee thereupon waived an examination of the abstract. And, of course, no examination of the abstract of title would have disclosed the equitable title of appellants to an undivided half interest.

It is well settled that the actual possession of land by a claimant is notice to a purchaser from a third person of the title of the possessor. Ramirez v. Smith, 94 Tex. 184, 59 S.W. 258. We think that the conduct of appellant H. S. Downing was such at the time and following the purchase of the land that a finding by a jury to the effect that H. S. Downing only claimed to be in possession under the title of his father would be sustained. H. S. Downing did not testify. Neither did any of the other appellants. This failure to testify will of itself justify an inference by a jury that the reason therefor was that H. S. Downing would have testified that he only claimed, at the time appellee purchased the land, the right of possession under his father's title. Such an inference, however, can only be drawn by a jury; it is an inference of fact, and it was error

for the court to draw such inference as a matter of law.

■ We are fully aware that courts have gone so far as to say that the possession of land by a claimant gave to a prospective purchaser the same notice of such claimant's title as if such title were duly recorded in the appropriate records. But it seems clear that the failure of a purchaser to inquire of a person in possession of land will not charge such purchaser with notice of rights in such possessor which were not then claimed by such possessor. "It would seem that the sole office which possession performs, in the matter of notice, is to put a person desiring to purchase upon inquiry, and that it has no effect in determining what the inquiry shall be, or of whom it shall be made." Eylar v. Eylar, 60 Tex. 315. Certainly the rule is not so broad that it can charge a purchaser with knowledge of rights in the possessor which the possessor did not know himself that he owned, and therefore could not have apprised the purchaser of, had he made inquiry of him. Here the appellee did testify that he made inquiry of the father when his son would vacate, and the son thereafter did vacate according to what the father had stated, which was after the sale had been completed in the sense that $100 was paid down and the deed delivered. This was undoubtedly much less than the value of the undivided half interest owned by the father in fee simple, and to which he could end did pass good title. A jury might well find that the appellee, in view of the fact that he only paid down $100, had made sufficient inquiry when he learned from the father that his son would move away when the sale was complete (and another house to which he was to move ready for occupancy), which the son did do long before any more was paid on the purchase price.

■ Appellee undertakes to defend his right to the fee simple title to the land upon the ground that the superior title thereto was vested in the Federal Land Bank to secure the payment of two loans which remained partially unpaid at the time the property was reconveyed to H. F. Downing. In answer to appellee's various contentions built upon the superior title being in the Federal Land Bank to secure a debt due it, and the fact that appellee thereafter paid off such debt, we think it sufficient to state that there is no evidence to show that the undivided half interest owned by H. F. Downing was not sufficient security for the debt due the Land Bank. Certainly the Bank would be bound to proceed first against the undivided half interest of H. F. Downing, had it foreclosed against the property while in the hands of H. F. Downing.

■ Appellee also urges the affirmance of the court's judgment upon the ground of estoppel. We think it enough to state that no issues were submitted to the jury on estoppel.

For the reasons given the judgment of the trial court must be reversed, and the cause remanded for a new trial.

Affirmed in part.

Reversed and remanded in part.

### On Motion for Rehearing

In our former opinion we found that at the time appellants' father conveyed the land here involved to appellee, he owned the full title to an undivided half interest in said land, and held the legal title to the other undivided half interest in trust for appellants. We held that whether appellee had constructive knowledge of appellants' interest in the land when he purchased it was a question of fact to be presented to the jury under proper instruction, and reversed the judgment based upon the verdict instructed in his favor.

■ Appellee insists, however, that he has succeeded by subrogation to the rights of the Federal Land Bank in and to said land, and that since we have held that the Land Bank owned the superior title to the land as an innocent purchaser for value to secure the payment of a note then amounting to $584 (which appellee has paid off), we should hold that appellee was, as a matter of law, an innocent purchaser for value. Since the Federal Land Bank owned the superior title to the land, as security to enforce the payment of the note amounting to $584 at the time appellee purchased the land, it is doubtless true that appellee had the right to pay off said note and sue appellants for contribution to the extent of their proportionate interest in the land, namely, one half thereof. It is further doubtless true that appellee would be entitled to bring suit to be subrogated to the rights of the Land Bank in the superior title to enforce such contribution. But it does not appear that appellee has ever established by judicial proceedings his right of subrogation.

"To be available, subrogation must be pleaded by the person claiming it. The facts upon which the claim for subrogation is based should be alleged, and the claimant should ask for such relief in his pleadings." 39 Tex.Jur. 803, 804. The pleadings of appellee in this case were limited to an answer to appellants' action in trespass to try title, and said answer contained only a general denial, a plea of not guilty, and pled various statutes of limitation. Since appellee's pleading could not form the basis for the establishment of subrogation transferring the superior title to appellee, appellee can not claim to be an innocent purchaser for value of the superior title as the successor of the Land Bank. Indeed, had appellee asserted such right in his pleadings, the probabilities are that appellants would have promptly contributed their share of the note, as the land is now oil-producing.

Appellee seems to entertain the opinion that by paying off the note he became thereby ipso facto subrogated to the rights of the Land Bank. It is more correct to say that by paying off said note appellee acquired the right to the remedy of subrogation, that is, an equity which entitled him to go to a court of equity and bring suit to be subrogated to the Land Bank's rights. "By paying the debt of another person, the payer does not ipso facto become subrogated to the rights of the creditor; he acquires only a right to subrogation, and this right must be actively asserted before the substitution or equitable assignment can actually take place. For the right of subrogation is not a substantive, tangible thing of such a nature that it can be seized and held independently of a judicial proceeding; it is a right of action only—that is, it must be established by a judicial proceeding." 39 Tex. Jur. 802, 803. Again: "By subrogation, a court of equity, for the purpose of doing exact justice between the parties in a given transaction, places one of them, to whom a legal right does not belong, in the position of a party to whom the right does belong." Id. 755. Failure of a party to bring suit to establish subrogation for two years will ordinarily subject his right to the two year statute of limitations. Darrow v. Summerville, 93 Tex. 92, 53 S.W. 680, 77 Am.St.Rep. 833. This shows that the right of subrogation is a mere equity, as distinguished from an equitable estate. Being a mere equity or executory right (a right to a remedy in a court of equity), it can mature into a vested or executed right only by a decree of court. See Lang v. Shell Pet. Co., Tex.Civ.App., 141 S.W.2d 667.

The evidence in this case strongly tended to prove an estoppel against appellant, H. S. Downing. But appellee did not plead it. "In order that it may be relied on, the defense of estoppel must be specially pleaded; a contention that a party is estopped will not be considered if the issue has not been presented by the pleadings, and evidence to show estoppel will be excluded." 17 Tex.Jur. 146.

Appellee's motion for rehearing is overruled.

Refused.

MONTEITH, C. J., not sitting.