Martha M. RUSSELL, Independent Executrix of the Estate of Frank Russell, Deceased, Appellant,

v.

S. J. SARKEYS, Appellee.

No. 18541.

United States Court of Appeals Fifth Circuit.

Feb. 6, 1961.

---

Leon Shipp, Robinson, Shipp, Robertson & Barnes, Oklahoma City, Okl., R. G. Ransome, Ransome & Ray, Brownsville, Tex., for appellant.

Fred B. Wagner, Wagner, Graham & Graham, Brownsville, Tex., John E. Luttrell, Luttrell & Luttrell, Norman, Okl., for appellee.

Before TUTTLE, Chief Judge, and JONES and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

The District Court allowed a purchaser at a judgment execution sale to recover from the judgment debtor the amount of the bid price which the purchaser lost by reason of an authoritative legal determination that the property belonged to a third party, not the judgment debtor. This appeal by the judgment debtor Frank Russell [1] attacks the judgment on three grounds. But in doing so, it is on the basis of law since he acknowledges several times in the briefs that there are no questions of fact. The grounds asserted are these. First, as the doctrine of caveat emptor applies to purchases at judicial sales in Oklahoma, there was no right of recovery merely because of a failure of the judgment debtor's title. Second, the action in Texas was barred by the two-year Texas statute of limitation for a debt not evidenced in writing. And third, the plaintiff-purchaser's unsuccessful efforts in the Oklahoma courts to resist the adverse claim of the third party (Martha) constituted a binding election which bars the case against the judgment debtor (Frank).

The problem arises out of a simple setting. Mid-Continent Petroleum Corporation obtained a judgment in 1949 in the Federal District Court in Oklahoma against Frank for over $150,000. In June 1954 pursuant to alias execution, the Marshal levied on lands said to belong to Frank Russell, the judgment debtor. The lands in question, certain mineral interests, were knocked down to Sarkeys under his bid of $10,015. While the application for confirmation of the sale was pending in the Oklahoma Federal Court, Martha Russell on August 25, 1954, commenced a suit in the Oklahoma State Court against Sarkeys to quiet title. Shortly thereafter the Federal Court confirmed the sale and the amount bid by Sarkeys was paid over to the judgment creditor (Mid-Continent).[2] The basis of Martha's state court case was essentially that the mineral interests were in her name and had been procured for her by her agent, her husband Frank, using separate funds previously advanced by her. The Oklahoma State District Court held for Martha and on appeal this was affirmed by the Supreme Court on March 12, 1957.

Within four months the present suit was filed on August 16, 1957 in the Federal Court at Brownsville, Texas, where Frank then lived and presumably had considerable property. It was essentially for money had and received which Frank Russell could not in good conscience retain. As an alternative ground, it was stated that the payment had reduced Frank's indebtedness as a judgment debtor by the sum of $10,015 and accordingly Sarkeys, the one who paid, was entitled to be subrogated to the rights of the judgment creditor (Mid-Continent) to that extent.

The District Court overruled the three contentions now asserted and entered judgment for Sarkeys, the purchaser.[3]

---

1. Frank Russell was the judgment debtor. He was also the defendant in the Texas federal suit below. Upon his death during the pendency of this case, Martha Russell, his widow, was substituted as his executrix. But since she was the "third party" held to own the property levied on and sold as the property of Frank Russell, it clarifies the problem to refer to the defendant-appellant-judgment debtor as Frank Russell.

2. Martha did not participate in the confirmation proceedings. Under Oklahoma law, she would have no standing to assert her superior title in that proceeding. Sarkeys v. Russell, Okl.1957, 309 P.2d 723, 727.

3. The judgment concluded:
   ██ "It is Accordingly Ordered * * and judgment is hereby rendered in favor of Plaintiff, S. J. Sarkeys, and against

■ We think there is no merit whatsoever to the attack based on the doctrine of caveat emptor. To be sure, as the Supreme Court's language in the very case giving rise to this controversy reflects, Sarkeys v. Russell, Okl.1957, 309 P.2d 723, 726, the doctrine of caveat emptor does apply to purchasers at an execution sale. This was previously declared in Goldenstern v. Gavin, 1940, 187 Okl. 338, 102 P.2d 582. See also 68 A.L.R. 659 (1929). But this idea has no application here. That principle comes into play as between the purchaser, on the one hand, and the Sheriff or Marshal as seller on the other. On other occasions it arises when rights acquired at a judicial sale are rejected as a defense to the claim of a third party having a superior title to the property thus purchased.

■ This suit is not against the judgment creditor or the Marshal or some third party adversely claiming the property. On the contrary, this action is a direct one by the purchaser against the judgment debtor whose indebtedness has been reduced by the amount of the payment for property not really owned by the judgment debtor. In that situation, the general rule—certainly that in Texas[4] where this action was brought and

much of Frank's property was alleged to be—is that a good faith purchaser at a judicial sale is not a volunteer and is entitled to be subrogated to the rights of the judgment creditor. 83 C.J.S. Subrogation § 35, at page 643. This principle seems to be one of widespread acceptance, and in the absence of some strong showing, which Frank has not even attempted, that Oklahoma would now take a contrary view, Bernhardt v. Polygraphic Co., 1956, 350 U.S. 198, 76 S. Ct. 273, 100 L.Ed. 199, 206, 208–210, we may in this Erie situation conclude that whichever substantive law controls, Oklahoma and Texas are in agreement on this at least.

On election of remedies, there is no real dispute about the legal principles pressed by Frank.[5] The dispute relates to whether Sarkeys, the purchaser, committed himself previously to a course which was irreconcilable with another course equally open but rejected.

The brief of Frank describes it this way: "At the time * * * Sarkeys had a choice of two remedies: 1. To call to the attention of the [Federal Oklahoma] Court the [fact that there was then an] action pending to quiet title and request the return of their moneys

Defendant * * * Frank Russell * * * for the sum of $10,015.00, together with interest * * * from August 17, 1954 * * *;

■ "It is Further Ordered * * * that Plaintiff be, * * * subrogated to all rights formerly held by Mid-Continent Petroleum Corporation under its judgment of July 1, 1949, against Frank Russell * * * to the extent of the credit aforesaid. * * *"

4. "A purchaser at a void execution sale is entitled to be subrogated to the rights of the execution creditor. That is to say, where the sale was ineffectual to convey title to the property sold and the purchaser was not guilty of fraud, he may be subrogated to the lien of the original judgment which his money has gone to discharge. * * *

"In like manner, a purchaser in good faith at a void judicial sale is entitled to be subrogated to the rights of the creditors whose claims have been discharged by the proceeds of such sale.

* * *" 39 Tex.Jur. Subrogation § 24 (1936) pp. 782–783. See also at 18 Tex. Jur. Executions § 175 (1932) and Johnson v. Frierson, Tex.Civ.App.1939, 133 S.W.2d 594, 597 (err. dismissed), as well as Massie v. McKee, Tex.Civ.App.1900, 56 S.W. 119; Hollon v. Hale, 1899, 21 Tex.Civ.App. 194, 51 S.W. 900 (err. ref.); cited with approval in Cates v. Field, Tex.Civ.App.1905, 85 S.W. 52, 55, reversed on other grounds Brown v. Cates, 99 Tex. 133, 87 S.W. 1149.

5. 28 C.J.S. Election of Remedies §§ 4, 11; Stafford v. McDougal, 1935, 171 Okl. 106, 42 P.2d 520; Delzell v. Couch, 1931, 150 Okl. 207, 299 P. 913; Citizens' Bank of Millerton v. Beeson, 1924, 104 Okl. 293, 231 P. 844; Barton v. Oklahoma, K. & M. Railway Co., 1923, 96 Okl. 119, 220 P. 929; Freeland v. Dolen, 1921, 84 Okl. 286, 203 P. 182; First Trust & Savings Bank of Chicago, Ill. v. Bloodworth, 1918, 70 Okl. 317, 174 P. 545; Herbert v. Wagg, 1910, 27 Okl. 674, 117 P. 209.

deposited for the purchase of the properties. 2. To rely upon the validity of the execution sale and pay the money into the [Federal Oklahoma] Court and claim the properties involved by virtue of the execution sale. He chose the second remedy; had the sale confirmed, paid the money into Court and defended Martha Russell's action to quiet title."

■■ Quite apart fom Sarkeys' present insistence that on accepted notions, election arises only when there is a purposeful choice between known rights—a condition not satisfied until the Supreme Court of Oklahoma authoritatively declared in Martha's favor in April 1957— we think that there was no election here of a kind which imperils this claim. The election of remedies, that is the choice, must be against the same party. Frank was not a party to the Oklahoma State Court proceedings. Martha was alone involved, and that suit stands as though the third party had been one wholly unrelated to Frank. Here Martha is not a party (see note 1, supra). It will be rare indeed when a stranger can assert that his adversary has completely lost his right of pursuit because of a contrary claim made in prior litigation brought against a wholly unrelated party.[6]

Moreover, there was nothing inconsistent with these two courses. Sarkeys claimed to be the owner of mineral interests formerly owned by Frank. He bought and paid for them thinking and contending that they belonged to Frank. Requesting the Federal Court to confirm the sale was consistent with that. But then along came Martha claiming that she, not Frank or Sarkeys, was the owner. His defense of her claim was an assertion of his ownership, not hers. The two were wholly consistent. Nor is this altered when these two previously available actions are matched against the present suit. Indeed, the theory of subrogation comes into play only where the title thought to have been acquired turns out to be nonexistent. What Frank claims to have been an inconsistent act was actually one indispensable to Frank being cast by reason of subrogation asserted by Sarkeys. By this sleight of hand, he can hardly conjure up an absolute defense out of the condition precedent required of the claimant.

■■ The nature of the purchaser's recovery against the judgment debtor, which we have discussed above, also disposes, we think, of the contention that the action was barred by the Texas two-year statute of limitations for "Actions for debt where the indebtedness is not evidenced by a contract in writing." Tex.Civ.Stat. Art. 5526 (Vernon 1958).[7] The statute has, of course, been construed broadly to cover all types of claims (other than torts as such) which give rise to an implied or express obligation to repay. It is not confined to any technical actions for debt. Reconstruction Finance Corp. v. Peterson Bros., 5 Cir., 1947, 160 F.2d 124, 126; Jones v. Canon, D.C.W.D.Tex.1933, 3 F.Supp. 49–50; Gordon v. Rhodes & Daniel, 1909, 102 Tex. 300, 116 S.W. 40, at page 41; Robinson v. Varnell, 16 Tex. 382; O'Connor v. Koch, Tex.Civ.App.1895, 29 S.W. 400. The limitation applies to equitable as well as legal actions. Huggins v. Johnston, Tex.Civ.App.1928, 3 S.W.2d 937 affirmed 120 Tex. 21, 35 S.W.2d 688. While this includes actions asserting subrogation, Downing v. Jeffrey, Tex.Civ. App.1943, 173 S.W.2d 241, the Texas decisions in such cases point to the true nature of the right being asserted. An implied contract not in writing is subject to the two, not the four, year statute of limitation and limitation begins to run when payment is made. Yndo v. Rivas, 1915, 107 Tex. 408, 180 S.W. 96; Darrow v. Summerhill, 1899, 93 Tex. 92, 53 S.W. 680. Consequently the limitation period applicable to one claiming a right of sub-

6. We are here dealing with election of remedies as a bar. We are not concerned with the use of such prior claims as admissions, etc. See McCormick, Evidence § 239 et seq. (1954).

7. Sarkeys paid the purchase money on August 17, 1954. This suit was not filed until three years later on August 16, 1957.

rogation to such an implied contract is likewise two years, but it is four years under a written contract.[8]

But here the right to which subrogation is asserted is not an implied unwritten contract, nor for that matter a written contract. What is asserted here is the right to be subrogated to a judgment. The limitation period on that is not the two-year term urged, but rather a ten-year, and certainly not less than a five-year period.[9] If Sarkeys has the standing of the judgment creditor (Mid-Continent), then the Federal Texas Court action was certainly timely under either one or both statutes.[10]

Of course, as we have pointed out above, the purchaser at the judicial sale does have the standing of the judgment creditor under the controlling substantive law. We would think it strange indeed if Texas were to accord to such equitable subrogee the substantive rights of the judgment creditor and at the same time encumber the effectual enforcement of such rights with procedural limitations relevant to a distinctly different legal obligation. To do so would be at odds with its usual approach to apply to subrogation the limitation period applicable to the particular underlying right, see note 8, supra. Once the law recognizes the purchaser to have the standing, to the extent paid, of the judgment cred-

itor, we think he steps into those shoes for all purposes.

The basis of this holding on limitations, however, requires that the judgment be construed, applied and enforced as subrogation to the original judgment held by Mid-Continent. The fact that the trial court's judgment, see note 3, supra, casts the decree in the form of the two apparently separate recoveries [1] and [2] is not to be controlling. Adjudging the recovery of [1] the specific dollar sum and the [2] declaration that Sarkeys is subrogated to the Mid-Continent judgment are elements of a single indivisible judgment. The first does not exist apart from the right of subrogation and the second is measured in terms of the ultimate money recovered. We do not perceive at this moment how tying the dollar recovery to the standing of subrogee could have any bearing upon that portion of the decree adjudging a fixed sum of money, but as there may be peculiarities arising from the intervening death of Frank Russell, we consider it appropriate that we make positive that the entire judgment is based upon subrogation. To the extent that the judgment in its original form, see note 3, supra, was or was intended to be a decree of separable rights, it will be deemed accordingly modified.

Modified and as modified, affirmed.

---

8. "Where the right of subrogation is based on an implied contract or a contract not in writing, the right of action is subject to the bar of two years limitations and may not be asserted after that period has elapsed. But where the cause of action is based upon a written instrument, then the four-year statute of limitations applies. The statute begins to run against a surety's right of subrogation from the time that payment of the debt of his principal is made." 38 Tex.Jur. Subrogation § 42 (1936). Fox v. Kroeger, 1931, 119 Tex. 511, 35 S.W.2d 679, 77 A.L.R. 663; Hanchett v. Ward, Tex. Com.App.1933, 65 S.W.2d 268; Ricketts v. Alliance Life Ins. Co., Tex.Civ.App. 1939, 135 S.W.2d 725 (err. dism'd).

9. Under Tex.Civ.Stat. Art. 5530 (Vernon 1958), a foreign judgment not barred at its situs becomes barred after ten years. Article 3773 keeps the judgment alive

for another ten years after execution within the original ten-year period. The Texas limitation period depends on the limitation period at the situs. The Oklahoma law is therefore presumably pertinent. But it is readily satisfied since an Oklahoma judgment does not become dormant for five years or for five years thereafter if execution is issued within the initial period. 12 Okl.St.Ann. § 735; see Price v. Sanditen, 1934, 170 Okl. 75, 38 P.2d 533.

10. The Texas Federal suit was filed August 16, 1957 well within the ten-year period from the entry of the judgment July 1, 1949. The alias execution leading to the sale to Sarkeys was issued June 25, 1954, a date within five years of the judgment. This kept the judgment alive for another five years until June 24, 1959.