## JAMES M. BURRUS, Appellant, v. JAMES M. COOK et al.

### Division One, December 23, 1908.

1. **LIMITATIONS: Raised by Demurrer: Pleading Exception.** The Statute of Limitations may be invoked by a demurrer, whenever the face of the petition discloses that the bar has become complete; and, if the cause of action in such case is such that the bar of the statute may be obviated by some exception in the statute, the facts constituting such exception should be stated in the petition.

2. ———: **Cosurety: As Equitable Assignee of Judgment.** Where one of the sureties pays the judgment debt of his principal, his suit as equitable assignee of the judgment against his cosurety to compel contribution is barred in five years after the date he paid the judgment. The limitation does not begin to run on the day the judgment was rendered, but, as to the cosurety who paid the judgment and brings his suit to compel contribution, on the day the judgment was paid. Where the judgment was rendered against the maker and his cosure-

ties in 1886, and was paid by one of the sureties in 1888, his suit against the other cosurety brought in 1903 was barred, whether the judgment (under the twenty-year Statute of Limitations) was barred or not, and whether or not the note that was the basis of the debt was barred. [Disapproving Brewing Co. v. Jordan, 110 Mo. App. 286.]

3. ———: Equity. The Statute of Limitations applies alike to suits in equity and actions at law. Whether the surety who paid the judgment and sues his cosurety to compel contribution, sues as the subrogated equitable assignee of the judgment or as the actual assignee, his action, in either case, is barred in five years after the date of payment.

4. ———: ———: Subrogation: Assignment. Equity will not make an assignment where the sole object was to avoid the Statute of Limitations.

5. ———: ———: Assignment: Alteration of Right. An actual assignment of a judgment to a surety on the judgment note or debt does not alter the rights of the parties, or give the surety a right of action on the judgment itself or the note itself. The substantive of the right of action—the right which the law raises up to compel by suit the principal or his cosurety to contribute his share of the debt—remains the same. Taking an actual assignment from the creditor, whether of the note or judgment thereon, is no more than what equity gives the cosurety without such assignment. Mere payment operates as an equitable assignment whenever necessary to aid the cosurety in securing the collaterals, liens, priorities, etc., held by the creditor; and by actual assignment he obtains nothing more.

6. ———: ———: ———: Proof. The surety in his suit to compel contribution cannot make out his case by merely offering the judgment in evidence and proving its assignment. He must show by parol evidence that he was surety, and what sum he paid to the creditor, and that he paid it under conditions that made him liable therefor to such creditor. And the same defenses and the same issues can be made against his right as an actual assignee to recover as could be made had he not taken an assignment. If he has paid more than his share of the debt, he must, with or without an assignment, depend upon his position as surety—both for interest and the amount he is to recover.

7. LIMITATION: Exception: Fraud: To Defeat Execution. To prevent the Statute of Limitations from beginning to run on account of undiscovered fraud, the fraud must be of such character as prevented the complaining party from bringing

the suit. Where the fraud charged in the petition went only to defeat execution on a judgment had one been obtained, it did not prevent the bringing of the action, and therefore did not prevent the running of the statute.

Transferred from Kansas City Court of Appeals.

AFFIRMED.

*J. Allen Prewitt* and *Olney Burrus* for appellant.

The demurrer of defendant Cook should not have been sustained. (1) Because the Statute of Limitations cannot be raised by demurrer. Smith & Kinzer v. Dean, 19 Mo. 63; Cooksey v. Railroad, 17 Mo. App. 141; Maddox v. Duncan, 62 Mo. App. 474; State to use v. Bird, 22 Mo. 473. It does not appear on the face of the petition that the claim is barred in any event and without any exception. Defendants' absence from the State would create one exception, and until defendant pleads the statute, it is unnecessary for plaintiff to plead the exception. Sec. 4282, R. S. 1899. (2) Defendant Cook directs his plea of the statute to plaintiff's claim of subrogation. Plaintiff did not ask to be subrogated to any right of defendant Cook, but to the right of the other defendants, and they alone could make such a plea. Alnut v. Leper, 48 Mo. 319; 13 Ency. Pl. & Pr., 194. (3) If defendant Cook could properly plead the Statute of Limitations by demurrer he must rely on the one pleaded. In no event does the five-year statute apply in this case. R. S. 1889, sec. 6796; Chiles v. School District, 103 Mo. App. 240; Harper v. Kemble, 65 Mo. App. 516. Defendant cannot, as he seems to do, rely on Sec. 4273, R. S. 1899, for two all-sufficient reasons: First, the section expressly exempts judgments from its operation; second, plaintiff's action is not upon a contract, obligation or liability, expressed or implied, as contemplated by the section. Mankey v. Willoughby, 21 Mo. App. 314; Dysart v. Crow, 170 Mo. 275; Angell on

Limitation (6 Ed.), secs. 26, 30; Campbell v. Campbell (Cal.), 65 Pac. 134. Defendants "demurrer" is founded on an assumption of defendant not pleaded by plaintiff. Defendant cannot, by demurrer, arbitrarily assume that plaintiff's equitable action is a legal one and then say that it is bad on grounds that apply only to a legal action. The office of a demurrer in an equity case is to reach a determination whether its allegations show proper cause for equitable interference. Fisher v. Patton, 134 Mo. 51; Williams v. Gerber, 75 Mo. App. 29; Aldrich v. Aldrich, 56 Vt. 324. (4) Although plaintiff has paid the debt, it may be treated in equity as still existing in order to allow him to force contribution from his cosurety, the defendant Cook, or equity may treat plaintiff as the equitable assignee of the judgment and allow him to recover in the name of the original creditor, or substitute him as a plaintiff and allow him to recover on the judgment just as Bowlin could do if plaintiff had not paid it. Price v. Clevenger, 98 Mo. App. 541; Bick v. Tanzy, 80 S. W. 904; Wilkes v. Vaughn, 83 S. W. 913; Dysart v. Crow, 170 Mo. 270; Benne v. Schnecko, 100 Mo. 257; Harper v. Rosenberger, 56 Mo. App. 388; Ferguson's Admr. v. Carson's Admr., 86 Mo. 673; Bank v. Kemble, 61 Mo. App. 215.

*Paxton & Rose* for respondents.

(1) The petition showed on its face that plaintiff's cause of action was barred, and it was proper to raise the bar of the Statute of Limitations by a special demurrer specifying the limitation of five years. Henoch v. Chaney, 61 Mo. 129; State ex rel. v. Spencer, 79 Mo. 317. (2) And especially in an equity suit, such as this, where the practice has long been established. 13 Ency. Pl. & Pr., 201, 202. (3) Plaintiff paid off the judgment in 1888, and did not bring suit against his cosurety till 1903. It was barred under the limitation of five years. Singleton v. Townsend, 45 Mo.

379. (4)   And the claim was barred both at law and in equity.   Junker v. Rush, 136 Ill. 179; Johnston v. Belden, 49 Iowa 301; Simpson v. McPhail, 17 Ill. App. 499; Bauer v. Gray, 18 Mo. App. 173; Rogers v. Brown, 61 Mo. 187.   (5)   The fraud alleged, viz: that Cook had conveyed his property, did not have any tendency to prevent Burrus from bringing his suit in time; at most it could only have affected the execution, not prevented the judgment.   Simpson v. McPhail, 17 Ill. App. 502; 19 Am. and Eng. Ency. Law (2 Ed.), 247, 248.

LAMM, J.—Bowlin held a note against Weese, principal, on which Burrus and Cook were cosureties. In a suit against Weese, Cook and Burrus, Bowlin recovered judgment in 1886 in the circuit court of Jackson county.   Burrus paid in full in June, 1888.   In 1903, Burrus as paying-surety sued Cook in equity to recover one-half his outlay, making the heirs of Bowlin parties defendant—his bill in three counts, viz. :

The first count was based on the theory that Burrus on paying the judgment received a written assignment thereof (now lost) ; that Cook prior to judgment had made himself insolvent by a fraudulent transfer of 160 acres of land in Bates county to his brother; that Bowlin was dead, his estate administered and his administrator discharged; and that Burrus was entitled to be substituted to all the rights and privileges possessed by Bowlin, his heirs and administrators in the judgment, and recover on the judgment for Cook's *pro rata,* he (Burrus) being wholly without a remedy at law or otherwise.

By the second count, the same narrations are made except nothing is said about the assignment of the judgment.   In lieu it is alleged that, by paying the judgment, Burrus became substituted in conscience to Bowlin's rights under it, became the equitable assignee of said judgment and, as such assignee, is enti-

tled to recover from the non-paying surety his *pro rata* share.

By the third count the same narrations as in the second are made except that a judgment in the name of the Bowlin heirs and representatives is sought against Cook for the use and benefit of Burrus.

Cook, through counsel, demurred to the bill specially, for that (quoting) "it states facts which show that plaintiff has no cause of action, in this that said petition is in legal effect a suit by Jas. M. Burrus against Jas. M. Cook, his cosurety, for contribution on a debt paid for their principal in 1888, and because more than five years have elapsed since such payment by plaintiff, this suit by him against his cosurety Jas. M. Cook is barred by the Statute of Limitations."

The demurrer was sustained, *nisi*, and plaintiff refusing to plead over, judgment went against him. From that judgment he appealed to the Kansas City Court of Appeals where two exhaustive opinions were handed down—the principal one by JOHNSON, J., in which BROADDUS, P. J., concurred, reversed the judgment and remanded the case. The other, by ELLISON, J., affirmed the judgment. [See Burrus v. Cook, 117 Mo. App. 385.]

By reason of divergence in opinion among the members of that learned court, the cause came here for final determination. Those two opinions were illuminating contributions to the law anent the rights of paying sureties, the essential elements constituting a cause of action in behalf of a paying-surety against a non-paying surety, and the application of the Statute of Limitations to the cause of action, to which nothing need be added. In my judgment the opinion of ELLISON, J., is a correct pronouncement of the law (making sufficient statement of the contentions and well disposing of them), and follows:

"In dissenting from the view, which my colleagues have taken," says Judge ELLISON, "I have concluded

to go over the whole record and state what I conceive to be the law involved in the case; remarking first upon the fact, that notwithstanding the extended examination made by them, they have not cited a case (save the one decided by this court) which involved the Statute of Limitations of the surety's right to sue, or in which that question was even referred to.

"Plaintiff instituted the action by filing a petition seeking to recover from a cosurety one-half the amount he paid for their principal. The defendant demurred to the petition which was sustained by the court and judgment entered for the defendant, whereupon plaintiff appealed.

"The petition alleges that plaintiff and defendant Cook were sureties on a note given by William Weese to Jacob Bowlin. That Bowlin, on September 20, 1886, obtained judgment on that note against all three parties for $355 with interest. That defendant then and there became legally bound as cosurety with plaintiff for one-half of said judgment. That Weese, the principal, has failed and refused to pay the judgment and has become a non-resident and insolvent. That the defendant, Cook, with the purpose of avoiding the payment of any part of the judgment, prior to the rendition thereof, fraudulently, and without consideration, conveyed all his property to his brother and thereby rendered himself insolvent. That by reason of the insolvency of Weese and defendant Cook, he—plaintiff—was compelled to pay the full amount of the judgment on the 25th of June, 1888, and on that day, Bowlin, the plaintiff in the judgment, assigned the same to him. That by virtue of such assignment, plaintiff became subrogated to all the rights of Bowlin in the judgment and became the equitable assignee thereof and entitled to recover one-half the amount thereof from defendant Cook. That Bowlin has long since died and administration on his estate has closed, and in consequence, plaintiff cannot revive the judg-

ment. That he cannot maintain an action at law against defendant and that he has at no time had an adequate remedy at law. Wherefore, plaintiff asked that he be substituted as a party plaintiff in said judgment and that it be credited with a payment of one-half thereof, and that he have judgment against defendant Cook for the remaining one-half. There were two other counts in the petition, but what we have stated is sufficient to base conclusions which will dispose of the case.

"I. The ground of demurrer is that the petition shows upon its face that the claim or cause of action is barred by the Statute of Limitations. It is first contended by plaintiff that the Statute of Limitations cannot be invoked by means of a demurrer. We, however, are satisfied that the benefit of the statute may be had in that way. Whenever, as in this case, the face of the petition discloses that the bar has become complete, a demurrer stating that as the ground is proper. [Henoch v. Chaney, 61 Mo. 129; State to use v. Bird, 22 Mo. 470; State ex rel. v. Spencer, 79 Mo. 314.] And, if the cause of action is such that it may be obviated by some exception in the statute, the facts stated in the petition should show such exception. In other words, the exception relieving plaintiff from the statute should be pleaded by him. [Humbert v. Trinity Church, 7 Paige 195.]

"It will be noticed that in the cases cited, State to use v. Bird, and State ex rel. v. Spencer, the expression is used that a demurrer may be adopted as a mode of invoking the Statute of Limitations where the statute creates an absolute bar, 'without any exceptions.' As our statute has many exceptions to its application, the plaintiff relies on these cases. The expression was perhaps inadvertently used. The authority cited in the first of the cases is Humbert v. Trinity Church, 7 Paige Ch. 195, where the language

of Chancellor WALWORTH is exactly to the contrary. He says that, 'if the case is within any of the exceptions of the statute the complainant must state the fact in his bill.' And that is stated to be the rule by Justice WASHINGTON in Wisner v. Barnet, 4 Wash. (C. C.) 639. We do not find that such qualification of the rule is made in any other cases than the two above noted. It is not made in Boyce v. Christy, 47 Mo. 70, nor in Henoch v. Chaney, *supra;* and we are relieved of any embarrassment from the expression by the later case of Heffernan v. Howell, 90 Mo. 344, where a demurrer was held properly sustained for the reason that the petition disclosed that the action was barred, 'no reason or excuse whatever being alleged in the petition why the action was not commenced within the time prescribed by the statute for bringing the suit.'

"II. It appears by the petition that plaintiff as cosurety with defendant paid the judgment in 1888, while the suit was not brought until 1903.

"The question presented is, when did the period of limitation begin to run against plaintiff; at the date of his payment of the judgment, for one-half of which he asks to recover; or at the date of the rendition of the judgment? (or, stated in a different way, is a surety, who has failed to assert his right to the judgment, entitled to the full period of limitation for suit on the judgment?) If the former, the period of limitation would be five years, and the action is therefore barred. If the latter, the period of limitation would be twenty years (as the statute then read), and the action would therefore not be barred. The question, as it relates to a principal and his surety, was presented to this court in Brewing Co. v. Jordan, 110 Mo. App. 286. That case was where a surety paid the principal's note, and more than five years afterwards, but within the ten-year limitation period for notes, brought his action in equity against the maker. He claimed that

his payment operated as an equitable assignment of the note itself from the payee, and that his right of action was not barred until the note was barred. That claim was sustained by this court. I am now satisfied that it ought not to have been. I think it contrary to the view of the Supreme Court of the State. The period of limitation of an action, whether against the principal or cosurety, begins to run from the day of the surety's payment (in case against cosurety, of more than his share), for on that day a cause of action accrues to him. This is expressly decided in Singleton v. Townsend, 45 Mo. 379; Burton v. Rutherford, 49 Mo. 255; Bushong v. Taylor, 82 Mo. 660, 671. And so it seems to have been decided in every other State where the question has been presented. [Junker v. Rush, 136 Ill. 179; Thayer v. Daniels, 110 Mass. 345; Harrah v. Jacobs, 75 Iowa 72; Johnston v. Belden, 49 Iowa 301; Faires v. Cockerell, 88 Texas 428; Hammond v. Myers, 30 Tex. 375; Darrow v. Summerhill, 93 Tex. 92, 105; Arbogast v. Hays, 98 Ind. 26; Joyce v. Joyce, 1 Bush 474; Scott v. Nichols, 27 Miss. 94; Loewenthal v. Coonan, 135 Cal. 381; Ryland v. Bank, 127 Cal. 525; Reeves v. Pulliam, 7 Baxter 119; Barnsback v. Reiner, 8 Minn. 59; Poe v. Dixon, 60 Ohio St. 124; Knotts v. Butler, 10 Rich. Eq. 143; Pickering v. Leiberman, 41 Fed. 376; Martin v. Frantz, 127 Pa. St. 389.]

"The same view is held by the English courts. [Davies v. Humphreys, 6 M. & W. 153; Ex parte Snowdon, L. R. 17 Ch. D. 44.]

"And the same is stated by text-writers. [Wood on Limitations, sec. 145; Angell on Limitations, sec. 131; Brandt on Suretyship, sec. 339; 1 Parsons on Contracts, 36 (bottom p.); 3 ib. 98; 2 Chitty on Contracts, 1231.]

"But it is said that the decisions in this State on that subject were in actions at law and that, therefore, they are not applicable to the present, or the Brewing

Company's case, which are equity cases for subroga-
tion. Some of the decisions were in law cases, but
others were not. Thus, Bushong v. Taylor was in
equity. At page 662 of the report, the brief for de-
fendant shows that the action was on an implied lia-
bility to which the five-year period of limitation ap-
plied. At page 665, opposing counsel for plaintiff
tacitly conceded this, but asserted that the statute did
not begin to run until he paid the debt; and this view
was sustained by the court at page 671. Several of
the foregoing cases cited from other States were also
actions in equity.

"But, if all those cases had been actions at law,
they would be of equal controlling authority in this
case in equity. For the rule is well understood that
equity follows the law and applies the same period of
limitation. [Rogers v. Brown, 61 Mo. 187; Bauer v.
Gray, 18 Mo. App. 164; Darrow   v. Summerhill, 93
Tex. 105; Junker v. Rush, 136 Ill. 179.]

"It is conceded that, in cases of this nature, courts
of equity and of law have concurrent jurisdiction.
What may be termed the right to the action and its
ultimate object are the same, and the foundation of the
action, as well as the amount of recovery, whether as-
serted at law or in equity, are the same. It is univer-
sally held that in all cases of concurrent jurisdiction,
equity 'will no more disregard the statute than a court
of law.' [Wood on Lim. (3 Ed.), sec. 58; 19 Am. and
Eng. Ency. Law (2 Ed.), 155.] 'Statutes of limitation,
. . .  when they are addressed to courts of equity
as well as courts of law, as they seem to be in con-
troversies of concurrent jurisdiction, are equally obli-
gatory in both forums as a means of promoting uni-
formity of decision.' [Godden v. Kimmell, 99 U. S.
201; Murray v. Coster, 20 Johns. 585; M'Crea v. Pur-
mort, 16 Wend. 460, 476; 2 Story, Eq. Jur., sec. 1520;
1 Pomeroy, Eq. Jur., sec. 419.] So it is said that the
doctrine of substitution 'will not be enforced at the

expense of a legal right.' [Rittenhouse v. Levering, 6 Watts & Serg. 198-200.]

"In Brewing Co. v. Jordan, we treated the question as having been frequently decided by the Supreme Court of this State and cited a number of cases, which I now conclude are not at all in point. In neither of them was there any question of limitations; nor was any reference made to such question in any way. But they were thought to have a bearing on the question because of expressions as to the right of a surety to be subrogated to the rights of the principal. These expressions state the well-recognized general principle of law as well as equity, that, so far as necessary to protect the rights of the surety, a payment of the debt does not extinguish it. That, 'it should still subsist with its liens and priorities to enable him to recover of the principal as well as to compel contribution by cosureties, or to avail himself of any securities or collaterals turned out by the principal,' and to that end, the surety could be considered in equity as having an assignment of the debt. [Berthold v. Berthold, 46 Mo. 557.] 'No principle is better settled than when a surety pays the debt of his principal, he by reason thereof, becomes entitled in equity to all of the rights, remedies, securities, funds, liens and equities which the creditor may have for the same debt.' [Storts v. George, 150 Mo. 1; George v. Somerville, 153 Mo. 16.] 'Mere payment of the debt by the surety is considered to operate as an assignment of it to the party paying with all the rights and liens which attached to it as incidents in the hands of the creditors.' [Benne v. Schnecko, 100 Mo. 250.]

"In thus asserting what the rights of a surety are, the Supreme Court did not say when, nor within what time, the surety should assert those rights. The statute itself has done that. The general law of the surety's right on payment of his principal's debt, or more than his share as between him and his cosurety, was

well recognized when the statute limiting the time when such rights should be asserted was enacted; so that, the general law and the statute taken together amount to this: that a surety, upon payment of the debt, has a right to the instrument upon which he is surety, with all the rights, securities, and liens, which attach to it, but he must *assert* those rights within five years after such payment. 'Where a surety who has paid the debt does not act before his claim is barred at law by the Statute of Limitations, manifesting his intention to put himself in the place of the original creditor, and thereby subrogating himself to the creditor's rights, equity will not subrogate him to those rights.' [1 Brandt on Suretyship (3 Ed.), sec. 339.] Before a right to subrogation accrues to a surety, he must have paid the debt (in case of cosurety, more than his portion of debt) and it must have been a valid debt at the time of his payment. Furthermore, as stated by Judge STORY, other issues 'of a very complicated nature may arise, from counter equities between some or all of the parties, resulting from contract, or from equities between themselves, or from peculiar transactions regarding third persons, . . . or from the very nature of the transaction [there may be], an exemption of one surety from becoming liable to contribution in favor of another.' The learned author then proceeds to set out several apt illustrations of his statement. [1 Story's Eq. Jur. (13 Ed.), sec. 498.] These various issues of fact may be the subject of sharp dispute and their solution will greatly depend upon oral testimony and the life and memory of witnesses. He should be required to establish his right within the period of its own limitation and not the period of the limitation of the original indebtedness, or of a judgment rendered thereon, for those periods might cover a great length of time; in this case, it is said, the space of twenty years. When he has thus established his right, while memory is less

treacherous and witnesses are yet alive, *then* he becomes entitled to the period of limitation of the instrument itself.

"So it is held that a surety, on payment of the debt, does not become *ipso facto* subrogated to the rights of the creditors, but only acquires a right to such subrogation (Hull v. Sherwood, 59 Mo. 172), which he must assert before his legal remedy is barred. [Junker v. Rush, 136 Ill. 179; Johnston v. Belden, 49 Iowa 301; Rittenhouse v. Levering, 6 Watts & Serg. 190; Joyce v. Joyce, 1 Bush 474.] And so Judge THOMPSON states the law in Bauer v. Gray, 18 Mo. App. 170. So it is said by Judge NAPTON that 'the right of a security to recover from his principal the amount which he has paid in his behalf, is a right which may be established in a court of law; but his right to stand in the place of the creditor, as to all securities, funds, liens, and equities which he may have, is a right which can only be established in a court of equity.' [Miller v. Woodward, 8 Mo. 169, 175.]

"In undertaking to defend the position that subrogation of a surety operates to place him literally in the creditor's shoes, with all the rights of the creditor, and to make him literally the owner of the creditor's claim (a note for instance) as though he were an ordinary assignee, and therefore entitled to the period of limitation prescribed for a note, one is led into the most unreasonable, illogical and inconsistent positions. Thus a creditor has the right, of course, to recover the full amount of the note, but the surety is not permitted 'to speculate off of his principal' nor his cosurety and can recover no more than he has been compelled to pay for him. As, if the surety should compromise or otherwise adjust the note at less than its face, he can recover no more than he pays. [Hearne v. Keath, 63 Mo. 84, 89; 1 Brandt on Suretyship, sec. 233; Stone v. Hammell, 83 Cal. 547; 27 Am. and Eng.

Ency. Law, 480; Sinclair v. Redington, 56 N. H. 146; Tarr v. Ravenscroft, 12 Gratt. 642.]

"So the indebtedness, for which he is surety, may draw the highest contractual rate of interest permitted by law and yet the surety (in absence of a statute) will only recover the legal rate of the sum he pays from the time of payment. [Bushnell v. Bushnell, 77 Wis. 435; Smith v. Mason, 44 Neb. 610, 621.]

"The fact is the surety, in some instances, has longer time than the creditor, and in some, shorter. Thus, if he should pay a part of a note, upon which he was surety, the day before it was barred by the statute, he would yet have five years in which to bring his action, for his cause of action can only arise when he makes payment (Singleton v. Townsend, 45 Mo. 380), though the creditor would be barred in one day for the balance. On the other hand, he may make such payment the day it became due, and the creditor might have ten years in which to sue for the balance, while the surety would only have five in which to bring his action. These, of course, are only illustrations, but they serve to show that the rights of the creditor and the rights of the surety have distinct periods of limitation.

"It may be illustrated further; suppose the surety makes partial payments at different times on the indebtedness represented by a note. The period of limitation would necessarily begin to run on each payment at the time it was made (in cases of cosurety at the time the payment was in excess of his share), and thus, on the theory that the surety owns the note, or stands in creditor's shoes, there would be several distinct periods of limitation on the same note. This and other illustrations are stated in Faires v. Cockerell, 88 Tex. 428; Angell on Lim., sec. 132.

"In an extended examination, I have not been able to find an authority against the position herein expressed save that of Sublett v. McKinney, 19 Tex.

439, and Hull v. Myers, 90 Ga. 674. The former was overruled in Faires v. Cockerell and Darrow v. Summerhill, *supra;* and the latter, besides being based on Sublett v. McKinney, was mere *obiter dictum,* since the action brought, as announced by the court, was not such as to permit an application of the creditor's period of limitation; on the contrary, was on the implied promise of the principal debtor, and therefore held to be barred. So, in consequence, all remarks of the court on the other branch were not on the point in judgment. In this connection, there are two cases, one in Ohio (Neal v. Nash, 23 Ohio St. 483), and the other in Wisconsin (Bushnell v. Bushnell, 77 Wis. 435), to which it may be well to call attention. In the former State, there is a statute prescribing a ten-year period of limitation for all actions in equity and so the court applied, *not the creditor's limitation,* but this statutory limit to that action, it being in equity. So in the latter State, there is a like statute, and the court said that it would not decide whether such statute would have application to an equitable action for subrogation, since the action before the court was at law on the implied promise.

"When the question is looked at from the standpoint of the surety's right of action, it is quite a plain one. His right of action, as a matter of course, is the foundation upon which he must recover. His right to subrogation is merely an aid to his right of action. His right of action is not based on an actual contract or promise of the principal debtor, or his cosurety, for none has been made. It is based on an implied promise, which the law raises up from principles of natural justice and right, that is, a promise which the law implies has been made to him when he became surety that he, the principal, will reimburse him for what he may have to pay, or, in case of a cosurety, for what he pays over his proportion, by reason of his suretyship. His right to subrogation is only one

of the means of obtaining reimbursement. It is an incident to his main right. Without such obligation, there would not, of course, be a right to subrogation. So when the obligation is no longer effective, the right to subrogation is destroyed. The statute reads that it shall not be an effective obligation unless asserted within five years. And this is true whether the right of the surety arises from an implied contract, or from natural justice and equity.

"That the surety, upon payment of the indebtedness, may, when necessary to his reimbursement, become, in equity, the assignee of the note or judgment evidencing such indebtedness, is everywhere recognized in this country. In many instances, it may serve him a highly effective purpose to be considered the assignee of the creditor's instrument itself, upon which he stands as surety. Such instrument may evidence an indebtedness, which is preferred over other creditors, as are many claims which must be presented to assignees, administrators, and the like. It may represent priority of liens in many instances. In some States, taking sureties on a note for purchase money of land does not waive the vendor's lien, and in such cases it would be of great value to the surety to be considered the assignee of such a note with its right to a lien. And so a surety may have paid a note representing the purchase money for a homestead. Or he may have discharged obligations, which were superior to dower. In these and doubtless many other instances, the surety would have a right to use the instrument itself so as to avail himself of the lien. [Carey v. Boyle, 53 Wis. 574; Markillie v. Allen, 120 Mich. 360; State ex rel. v. Atkins, 53 Ark. 303; Gilbert v. Neely, 35 Ark. 24.] But equity will not make an assignment, where *the sole object is to avoid the Statute of Limitations,* as was the purpose in Brewing Co. v. Jordan, and in this case.

"III. The petition alleges, and we must therefore accept it as a fact, that this plaintiff took an assignment of the judgment when he paid it. But that can make no difference in the limitation period. [Johnston v. Belden, 49 Iowa 301; Harrah v. Jacobs, 75 Iowa 72.] The St. Louis Court of Appeals has decided that an assignment of a note to the surety did not alter the rights of the parties, nor give him a cause of action on the note itself. [Williams v. Gerber, 75 Mo. App. 18, 30.] The substantive, which give a surety a cause of action against his principal or his cosurety, remains the same. Some courts state that the surety's right of action is based on an implied promise which is raised up by the law against the principal when the surety enters into his obligation, that the principal will reimburse him if he should be compelled to pay the debt; and against the cosurety that he will reimburse the surety for whatever he pays more than his share of the debt. Other courts state that such rights of action are not referable to a contract, but that the law raises them up from principles of natural equity and justice. But whichever mode of expression is used, *it is an operation of law* and the same statute of limitation applies. Whether we say that the surety's right of action arises from an implied promise, or from natural justice, his cause of action is the same, that is, it is for reimbursement for money which he has paid out for another. That cause of action must be proved in the same way when an assignment has been made to the surety of the evidence of indebtedness (such as a note or judgment) as it would be if there had been no assignment. The surety cannot make out his case by merely offering the note or judgment in evidence and proving the assignment. The note or judgment being against him, such proof alone would show that they were discharged and extinguished by

his payment of them. He is confronted with the extraordinary situation of a debtor taking an assignment of a claim against himself. He, therefore, must explain by parol evidence the peculiar relation that he bore to the transaction in order to prevent the usual application of the law that a payment by a debtor extinguishes the obligation. To sustain himself, he must necessarily depend upon extraneous matter. That is, he must show that he was a surety, and that sum he paid to the creditor and that he paid it under conditions which rendered him liable therefor to such creditor. And so the same defenses and the same issues can be made against his right to recover as if he had not taken an assignment. In other words, taking an actual assignment from the creditor is no more than what equity gave him without such assignment; for we have already seen that his mere payment operates as an equitable assignment whenever necessary to aid him in securing the collaterals, liens, priorities, etc., held by the creditor. By taking an actual assignment, the surety manifestly does not acquire any additional right. He is compelled to depend upon his position as surety, else, as already stated, the assignment itself would be a discharge of the obligation, since it is an assignment to the debtor. He still, notwithstanding the assignment, cannot recover the face of the obligation, but only what he has paid; nor can he recover the rate of interest named in the obligation, but only legal interest from the date of his payment; and it must be shown, if the issue is made, that he paid the debt under such conditions as entitled him to reimbursement. It seems then to be clear that the debtor surety cannot have a cause of action as such, on the obligation upon which he stands as surety, but that his cause of action depends wholly upon matters *aliunde,* and that therefore the period of limitation for the original obligation is not the period which limits his right as surety.

"IV.   Plaintiff, however, sets up fraud on the part of Cook in avoidance of the statute.   A part of our Statute of Limitations (sec. 4290, R. S. 1899), provides that if a party by improper conduct prevents the commencement of an action, it may be begun within the proper period of limitation after the commencement of the action shall have ceased to be so prevented. But the fraud charged in the petition did not prevent the beginning of an action.   It only went to defeat an execution on a judgment which might be obtained in such action.   The statute has no application to such case.   The fraud must be of such character as prevented the complaining party from bringing the suit. [19 Am. and Eng. Ency. Law (2 Ed.), 247.]   It is not material to inquire (as plaintiff wishes done in this case) whether a suit would have resulted in collecting the debt.   [Simpson v. McPhail, 17 Ill. App. 502.]   I must therefore conclude with the trial court that plaintiff's action is barred and that the demurrer to the petition was properly sustained.

"Deeming the decision rendered by the majority to be contrary to the following previous decisions of the Supreme Court:   Singleton v. Townsend, 45 Mo. 379; Burton v. Rutherford, 49 Mo. 255; and Bushong v. Taylor, 82 Mo. 671; and the following previous decisions of the St. Louis Court of Appeals:   Bauer v. Gray, 18 Mo. App. 164, and Williams v. Gerber, 75 Mo. App. 18, the cause should be certified to the Supreme Court."

On the reasoning of the foregoing opinion, the judgment of the circuit court of Jackson county is affirmed.   It is so ordered.   All concur, but in concurring my brethren are of opinion that the bill does not state facts sufficient to make the case one of equitable cognizance.   That as it stands, the case is an action at law.   On that proposition I say nothing.