## WILLIAM T. PETTY, Executor, Appellant v. JAMES H. TUCKER, Respondent.

**Kansas City Court of Appeals,  May 13, 1912.**

1. **SUBROGATION: Insane Person: Volunteer.** If one pays the debt of an insane person, which is secured by mortgage on real estate, and makes the payment in order to prevent a sale under the mortgage and save the property for the insane person, he is not a volunteer and may be subrogated to the rights of the mortgagee in the mortgage debt.

2. ———: ———: ———: **Limitations.** If one pays the mortgage debt of an insane person in order to save it from sale under the mortgage, an eqitable obligation arises in favor of the party making the payment and he has a right of subrogation to which the five years period of the Statute of Limitations applies, which he must assert within that time and not the period applicable to the limitation of the original debt.

3. ———: ———: ———: **New Promise: Writing: Contract: Statute.** In order to revive an obligation due from an insane person to one who pays his mortgage debt to prevent a sale of his land, the promise of the insane person, after becoming sane, to reimburse the party making the payment, must be in writing. The Statute of Limitations in using the word "Contract" in reference to new promises, includes an equitable obligation.

4. ———: ———: ———: ———: **Pleading.** Where a debt barred by the Statute of Limitations, is    revived by a new promise in writing, in an action on such revived obligation the petition should allege the new promise to be in writing.

5. ———: ———: ———: ———: ———: **Filing New Promise: Denial: Quaere.** Where a debt barred by the Statute of Limitations, is revived by a new promise in writing, in an action on such debt, the petition is founded in part upon the new promise, and the writing should be filed with the petition, as required by statute in ordinary cases, so that the defendant, as provided by statute, may deny its execution under oath, if he so desires. *Quaere.*

6. ———: ———: ———: **Demurrer.** Where the petition discloses that an action is barred and does not state facts showing a valid new promise, a demurrer is a proper course of procedure.

Appeal from Linn Circuit Court.—*Hon. John P. Butler,* Judge.

AFFIRMED.

*Frank P. Divelbiss* and *Jas. L. Farris* for appellant.

*J. M. Davis & Son* for respondent.

ELLISON, J.—Plaintiff is the executor of the will of James P. Ward, deceased, and on the 19th of May, 1911, brought this action asking to be subrogated to the rights of Caldwell county in a note and mortgage given by James H. Tucker to said county for borrowed money. The petition alleges that on the 4th of February, 1889, Tucker borrowed $250 of the school fund of said county and gave his note (with mortgage on his land to secure the same) whereby he promised to pay that sum on the 4th of February, 1890. That he failed to pay the note and on the 5th of August, 1895, it amounted, with interest, to the sum of $412.50, and the said county was threatening to foreclose the mortgage for non-payment. That at that time defendant Tucker (who was deceased's nephew) was insane and confined in a state asylum, and that his mother (deceased's sister) was residing on the lands mortgaged

and dependent thereon for support, and requested deceased to pay the note due to the county so as to save the land from sale and thereby preserve it for defendant, if he should be restored to his right mind. That thereupon, on said 5th day of August, 1895, with the expectation of being subrogated to the rights of the county, he paid the county $412.50, the full amount due on the note, and it, with the mortgage, was delivered to him, but by mistake there was an entry of satisfaction made on the margin of the record of the mortgage.

It is then alleged that defendant was afterwards restored to his right mind and released from the asylum and that he afterwards, in the year 1907, promised deceased to repay him the full amount so advanced for him, but failed to do so; and that after deceased's death defendant promised plaintiff, as executor, to pay such sum and has wholly failed to do so. The prayer of the petition is for judgment for the amount thus paid for defendant, and that plaintiff, as executor, be subrogated to and succeed to the rights of Caldwell county under the mortgage and that such mortgage be foreclosed, etc.

There was a demurrer to the petition on the ground that on its face it was disclosed that whatever cause of action plaintiff may have had was barred by the Statute of Limitations. And that the promise to pay after defendant was restored to his mind and health was not in writing, or by part payment. This demurrer was sustained and plaintiff has brought the case here.

We are not inclined to adopt defendant's theory that plaintiff's intestate was a mere volunteer in paying defendant's debt and therefore could not have a valid claim against defendant. Defendant was insane and the payment was made by the intestate for the purpose of protecting his home and thus preserving it to him in case he became of sound mind. It is true that

in thus coming to the relief of an insane man he did not make him a legal debtor—did not create a debt at law. But he did, by that act, originate an equitable claim to subrogation. If one pays a debt of an insane man, which is secured by a valid mortgage on his real estate, for the purpose of preserving such real estate, he can be subrogated to the rights of the mortgagee. [37 Cyc. 467, and note 66; 3 Pomeroy's Eq. Jur., sec. 1300.]

But all claims, legal or equitable, have a time limited for their assertion, and in this State it is well settled that the right of action accrues at the time the payment is made. [Burrus v. Cook, 215 Mo. 496; Singleton v. Townsend, 45 Mo. 379.] When a surety signs a note for a principal, there is said to be an implied promise on the part of the latter to pay the surety whatever he may have to pay by reason of his suretyship. And where there are several sureties, that there is an implied promise by each to pay the other whatever he may be compelled to pay for the principal over his proportion. These obligations are sometimes said not to arise from an implied promise, but that they come into existence upon equitable principles of justice and good conscience. [Furnold v. Bank, 44 Mo. 336, 338.] It is, however, clear that whatever may bring them into existence, they are *obligations* due from the principal in the one case and the cosurety in the other. Therefore, section 1889, Revised Statutes 1909, declaring that "actions upon contracts, obligations or liabilities, express or implied," shall be barred in five years, applies; and since the claim of plaintiff's intestate arose on the 5th of August, 1895, and this action was not brought until the 19th of May, 1911, it is barred by the statute just cited, unless saved by the subsequent promise of defendant made in 1907.

It is provided by section 1909 of the limitations statute, that, "In actions founded on any contract, no acknowledgment or promise hereafter made shall

be evidence of a new or continuing contract," unless it be made in writing. Plaintiff's position is that this section, by its terms, applies only to *"contracts,"* and that since his cause of action does not arise upon, or out of, contract, but rather from equitable considerations of justice to which we have just referred, the statute requiring the promise to be in writing has no application and a verbal promise is therefore binding. Now whether the obligation of a person whose debt has been paid for him while he was insane, to save his estate, arises out of a contract (implied), or from equitable principles of justice, it is, at all events, an obligation and, as we have seen, it is barred in five years; and we think that the statute (sec. 1909), though using only the word "contract," means to include any obligation to which it has fixed a bar. That is to say, when the statute (sec. 1889) fixed a limitation of five years on an "obligation" to pay money, it meant by the word "contract," as used in section 1909, to require that there must be a written promise to revive such an obligation to pay money as exists in this case.

The facts stated in the petition showing the action to be barred, it became necessary to allege therein any matter of exception which would relieve the bar. In this case the promise subsequent to the bar not being a written promise, did not revive the obligation, and a demurrer was the proper remedy. [Burrus v. Cook, supra.]

But plaintiff claims that his general allegation of a promise will be interpreted to mean a legal promise and therefore he has, in legal intendment pleaded a promise in writing. Conceding plaintiff means that the promise charged is a written promise, yet, was it not necessary for him to allege it to be written?

If it appears that a cause of action would be barred by the Statute of Limitations but for a new promise, a new promise must be alleged, so that the pe-

tition may contain a statement of a valid and subsisting claim. Otherwise, it would be subject to demurrer. [Boyce v. Christy, 47 Mo. 70; Henoch v. Chaney, 61 Mo. 129; Burrus v. Cook, supra.] In recognition of this rule plaintiff alleged that after the period of five years from the date of his payment of defendant's debt and within five years of bringing the action, the latter promised to pay him. Sections 1909 and 1911, R. S. 1909, are applicable to the question. The former makes necessary to the validity of such promise that it be in writing. Plaintiff insists that from an allegation of a promise, merely, the law will assume a legal promise, that is, a promise in writing; and that is the view taken on questions involving the statute of frauds. [Phillips v. Hardenburg, 181 Mo. 463.] But no ruling in this state has been called to our attention where the promise was in avoidance of the Statute of Limitations. We think considerations arise as to the latter which do not apply to a plea of the Statute of Frauds.

While it has been decided in this state that the cause of action is upon the original promise, the new promise being merely a reviver of it (Carr v. Harlbut, 41 Mo. 264, 269), yet it is nevertheless necessary to allege the new promise, else, as we have seen, the petition is demurrable. In other words, notwithstanding the cause of action is on the original promise, it takes the new promise to complete or entirely make out the cause of action. Certainly the petition, in part at least, is "founded upon" the new promise. In such circumstances if a writing is depended upon, is, or is it not, necessary to allege that such new promise was written?

In all cases where "the petition is founded" upon an instrument of writing executed by the other party, the instrument must be filed with the petition. [Sec. 1844, R. S. 1909.] And by provision of section 1985 of the same statute, if the execution of such writ-

ing be not denied by answer, under oath, it shall be adjudged to be confessed. If we are correct in the statement that a petition which, in order to state a cause of action, *must* contain an allegation of a new promise, is, partly, "founded" on that promise, then it was necessary for plaintiff to have filed with his petition the paper containing the written promise. This, in justice to defendant, that he might see if he ever executed it, and to the end that he could determine whether to deny its execution under oath and thereby put plaintiff to the test of proving that he executed it, as provided by section 1985.

So far as concerns the necessity of a denial under oath, of the execution of written instruments, the statute of Kansas (Sec. 5703, R. S. 1909; Sec. 108, Code of 1868) is the same as ours; except that it applies to all instruments, while ours includes only those executed by the opposite party. And in the case of Smith v. Beeler, 48 Kan. 669, it was taken for granted, without discussion, that if the new promise was in writing, it was necessary to so allege; and it was ruled that unless the defendant denied its execution under oath, it would be taken as confessed. And in 2 Chitty on Pleading, 436, the form for the plea is that it was in writing, "a copy whereof is hereto annexed."

These considerations would seem to demand that the petition allege the promise to be in writing.

But it is not necessary to put our decision on the above statutory ground, and we do not. There is another reason which we think requires the character of the promise to be alleged. And that is, that there are more than one kind of new promises which will relieve the bar of the statute, and therefore it is but fair to require the plaintiff to allege which one is meant. When there is but one legal kind, and a promise generally is alleged, as in cases involving the Statute of Frauds, it may be assumed that the legal one is intended; but where there are more than one, a mere

general allegation of a promise, leaves the defendant in doubt and confusion as to what is meant. If a person makes a part payment, recognizing the balance of the debt, though not evidenced by a writing, it is a new promise. [State ex rel. v. Allen, 132 Mo. App. 98, 112; Wesner v. Stein, 97 Pa. St. 322, 326.] In Barclay's Appeal, 64 Pa. St. 69, 72, it is said that "there can be no more unequivocal acknowledgment of a present existing debt, than a. payment on account of it, and, according to all the authorities, this is all that is required to take a case out of the Statute of Limitations." In Egery v. Decrew, 53 Me. 392, it is said that "payment operates as a renewal of the promise and saves the case from the statute." Before the statute requiring a new promise (without payment) to be in writing, an acknowledgment, without payment, was "considered a new promise, for which the old debt is a sufficient consideration." [Moore v. Bank of Columbia, 6 Peters, 86, 92.] Even if part payment is made after the debt is barred, it will revive the promise. [Shannon v. Austin, 67 Mo. 485.]

Our statute has not changed this rule; for, notwithstanding section 1909 of the statute requires a new promise to be in writing, such requirement is qualified by section 1911, retaining the efficiency of a part payment; and such payment may be shown by parol. [Egery v. Decrew, supra; Wood on Limitations, sec. 111.] Formerly, a new or revival promise might be established by proof of verbal acknowledgment, unaccompanied by payment; or by a written acknowledgment; or by a part payment. On account of vexatious misunderstandings, temptation to perjury, etc., the statute (known as Lord Tenderton's Act) abolished the first mode by requiring the second, but retained the third.

So it is manifest, as we have said, that there are two different kinds of promises which will relieve the bar of the statute, and when plaintiff merely alleged a

promise, generally, he did not advise defendant on what it was he based his claim. If such pleading is sustained, it will put defendant to the necessity, with resulting trouble and expense, of preparing to meet each of the two modes of making a renewal promise. And this is no trivial matter. Besides unnecessary pertubation and doubt in which defendant is placed, he must be prepared to show that the writing, if that turns out to be what plaintiff meant by his general allegation, is a forgery, or is insufficient on its face, etc.; and he must likewise gather his witnesses and array the circumstances connected with the case, to show that he never made a payment (if that be plaintiff's meaning), or if he did, that it was not in such circumstances as amounted to a promise, etc.

A question quite like this was decided in Forsythe v. Bristowe, 8 Exch. (Welsby, Hurlstone & Gordon) 347. The reasons given for the decision appear in the observations made by the judges during the hearing. The plea of a new promise there appeared in the replication as an acknowledgment, generally, of the debt, within the period of limitation, and it was insisted that "it was not required to specify the particular mode of acknowledgment, but only to state generally that there was an acknowledgment within the prescribed period." But Parke, B. said, "There may be great expense in investigating part payment, and very little in proving an acknowledgment in writing; but the effect of this form of replication would be to cast upon the defendant the costs of that part on which he succeeded." Alderson, B. said, "It is a pleading so framed as to prejudice the fair trial of the action, because it embraces *three points, and compels the opposite party to come prepared to meet them all.*" (Italics ours.) Parke, B. again speaking, said, that the statute "provides three modes (we have seen that ours provides two) by which a specialty debt may be taken out of the operation of that statute; and it is a

prejudice to a defendant to be compelled to come pre-
pared to meet three different matters, where perhaps
the plaintiff intends to rely on one only."

In Jesup v. Epping, 66 Ga. 334, the court states
the law as it is written by Judge Wagner in Carr v.
Hurlbut, supra, that a new promise does not create a
new liability, but revives the old one; yet the court
said it was necessary to set forth the promise with
some certainty. And in Thornton v. Nichols, 119 Ga.
50, 52, it is said the admission should be alleged to be
written. [Ruddell v. Folsom, 14 Ark. 213, 217; Bank
v. Conway, 13 Ark. 344.]

In every instance we have noticed in the reported
cases where a written promise has been relied upon,
it has been alleged to be in writing. It seems never to
have occurred to the pleader to omit this important
fact. [Mastin v. Branham, 86 Mo. 643; Cape Girar-
deau Co. v. Harbison, 58 Mo. 90, 93; Wells v. Hargrave,
117 Mo. 563; Chiles v. School District, 103 Mo. App.
240.] And in both forms of petition given in 3 Bates
Pleading & Prac. 2051, whether on the new promise or
the original contract, the promise is stated to be in
writing. So, the form for such pleading as given in
2 Chitty on Pleading, 436, is, "that within six years
before the suing out of this writ the defendant executed
a writing, a copy whereof is hereto annexed, by which
he acknowledged said debt, and agreed to pay the
same."

The foregoing views result in an affirmance of the
judgment. All concur.