# MARCH, 1939.

H. J. Schuchman, Plaintiff, Fidelity and Guaranty Fire Corporation of Baltimore, Maryland, Assignee, Appellant, v. Frances E. Roberts, Respondent.—133 S. W. (2d) 1030.

Kansas City Court of Appeals. July 3, 1939.

510

*A. D. Campbell* for appellant.

*J. G. Gresham* for respondent.

KEMP, J.—On April 2, 1936, plaintiff Schuchman filed suit in the Circuit Court of Schuyler County, Missouri, for recovery of the value of a mare. The petition alleged that the defendant, at all the times therein mentioned, was a common carrier engaged in the business of transporting livestock for hire between Queen City in Schuyler County, and the City of Memphis in Scotland County; that on the 29th day of June, 1935, plaintiff delivered to defendant a brood mare in foal, in good condition and of the value of $150, "to be well and safely carried and transported from the said city of Queen City to the said city of Memphis, and at said latter place to be delivered to plaintiff in as good condition as when received by defendant;" that defendant, in disregard of her duty as such carrier, failed to safely carry and transport said mare between said points, and failed to deliver same to plaintiff in as good condition as when received by defendant; that said mare was greatly injured when delivered to plaintiff in the City of Memphis, and immediately after delivery died from said injuries, to plaintiff's damage in the sum of $150 for which judgment was prayed.

The case was tried before a jury, resulting in a verdict for plaintiff in the sum of $100, on which judgment in said amount was duly rendered. Thereafter "for value received" the judgment was assigned by plaintiff to Fidelity and Guaranty Fire Corporation, appellant herein, which assignment is attached to the margin of the record thereof. Thereafter a general execution was issued on the judgment by the clerk, at the instance of appellant.

Thereupon respondent (defendant) filed a motion to quash said execution, on the grounds that:

"said execution is void for the reason that the judgment on which said execution was issued has been fully paid and satisfied.

"Defendant further shows the court that said corporation assignee of said plaintiff was obligated under their policy contract No. MT 102912, issued August 22nd, 1934, in favor of Frances E. Roberts, above named defendant, to pay this judgment."

Defendant filed an answer to said motion admitting the assignment and denying every other allegation of the motion. Said motion was presented to the judge of said court in vacation and a temporary stay of execution was granted. Thereafter, upon final hearing of said motion, the respondent (defendant), in support of said motion, offered the following evidence, to-wit:

"1. Defendant's Exhibit "A," which was an insurance policy issued by the appellant insurance company to respondent on August 22, 1934, for the term of one year, and which contained the following endorsement:

"Endorsement.

"In consideration of the premium stated in the policy to which this endorsement is attached, the Company hereby waived a description

of the motor vehicles insured hereunder and agreed to pay any final judgment for damage to cargo caused by any and all other motor vehicles operated by the Assured pursuant to the certificate of Public Convenience and Necessity issued by the Public Service Commission of Missouri, within the limits set forth herein; and further agrees that upon its failure to pay any such final judgment, such judgment creditor may maintain an action in any court of competent jurisdiction to compel such payment.

"It is also understood and agreed that the policy to which this endorsement is attached, is extended to cover damage to and loss of property (cargo) while in the possession of and under the control of the assured, and the Company agrees to pay, within the limits of the policy, any final judgment rendered against the Assured as the result of such damage to or loss of property.

"Nothing contained in the policy or any endorsement thereto nor the violation of any provisions thereof by the Assured shall relieve the Company of liability hereunder or from the payment of any such judgment.

"The policy to which this endorsement is attached shall not expire, nor shall cancellation take effect, until after ten days' notice in writing by the Company shall have first been given to the Public Service Commission of Missouri at its office at Jefferson City, Missouri, said ten days' notice to commence to run from the date notice is actually received at the office of the Commission.

"The conditions, limitations and provisions in the policy are however, to remain in full force and effect as binding between the Assured and the Company and if the Company pays any loss under the policy which would not have been paid had this endorsement not been attached to the policy or has resulted directly or indirectly from the violation or breach of any of the provisions therein, the Assured agrees to reimburse the Company to the full extent of such loss.

"Attached to and forming a part of policy No. MT 102912 of the Fidelity & Guaranty Fire Corp. of Baltimore, Maryland.

"Date August 22nd, 1934."

The policy itself insured the respondent against loss or damage for certain specified hazards therein stated, and specifically excluded liability for loss under a schedule of exceptions therein set out, so that the scope of liability for damage suffered by the insured is more limited than the obligation under the endorsement.

"2. Defendant's Exhibit "B," which was Rule No. 11 of the Missouri Public Service Commission's Rules and Regulations relating to the operation of motor carriers, etc., which so far as pertinent to this case is as follows:

"Rule No. 11. Liability Insurance, Indorsement, Intrastate Freight Carrier.—There shall be attached to all liability insurance

policies issued pursuant to the last preceding rule the following indorsement, to-wit:

. . . . . . .

"Where insurance companies desire to write only cargo coverage the following endorsement may be used:"

Here follows verbatim the endorsement appearing upon the policy as above set out.

Each of these exhibits was objected to by appellant on the ground that "it does not tend to prove or disprove any issue in the cause."

Following the introduction in evidence of these instruments there was a stipulation that "the Fidelity and Guaranty Fire Corporation of Baltimore, Maryland, is the assignee," and it was further stipulated that "the judgment was for damage to cargo."

Appellant offered in evidence the judgment rendered in the case and the assignment of same noted on the margin of the judgment record. This was all of the evidence on the motion. Upon this record the court sustained respondent's motion to quash, from which judgment appellant duly prosecuted this appeal.

Appellant, under its first assignment of error, contends that the motion pleads a payment of the judgment and that there is no proof of payment, hence the motion to quash should not have been sustained. In support of this point it cites H. W. Eddy Insurance, Inc., v. National Union Fire Ins. Co., 94 S. W. (2d) 1062, l. c. 1066. We are unable to see wherein the Eddy case is anywise in point. The court there said:

"In this case plaintiff pleaded in each instance that the particular policy issued in defendant company had called for the payment of a definitely stated premium, 'which said sum was paid the defendant by plaintiff's assignor.' Now a mere plea of payment, without more, denotes payment in money, and particularly so in the case of insurance contracts. [Citing cases.] And if payment is to be proved in any other fashion than by payment in money, such proof must rest upon an independent agreement to that effect, the substantive facts of which must be specifically pleaded."

The inapplicability of this case to the situation in the case at bar appears from the further language of the opinion:

"Here, however, the proof was not of payment to defendant in money, but of payment by a balancing of the mutual accounts between plaintiff and Hoffmann Son & Co., defendant's general agent, so as to effect payment by crediting Hoffmann Son & Co. with certain sums owed by it to plaintiff by reason of its cancellation of certain insurance policies theretofore issued by it as agent for an insurance company other than defendant."

The court merely held that where proof of payment was of such character, then these facts should have been specifically pleaded, but

even under such circumstances the court there held that though the evidence was technically inadmissible, the judgment should not be reversed for the reason that the error did not materially affect the merits of the action.

However, that situation is not presented in the case at bar. The plea is that the judgment was paid and there is nothing to indicate that it was paid in any other way than by money. The fact that the assignment was made by the judgment creditor to the insurance company and the recital that it was made ''for value received,'' we think fairly gives rise to the inference (nothing to the contrary appearing) that the judgment was paid, and further that it was paid in money. We rule this point against appellant.

Appellant next contends that the court erred in quashing the execution for the reason that there was no evidence that appellant was obligated by its policy to pay the judgment against respondent, there being no evidence that the mare described in the original suit was transported in either of the trucks specifically mentioned in the policy or in any other motor vehicle for which the Public Service Commission had issued a permit or certificate.

This contention cannot be sustained. It is true that by the endorsement the company waives a description of the motor vehicles insured thereunder and agrees ''to pay any final judgment for damage to cargo caused by any and *all other motor vehicles operated by the assured pursuant to the certificate of public Convenience and Necessity issued by the Public Service Commission of Missouri.* . . .'' If this were the extent of the obligation assumed by the insurance company under said endorsement, we think appellant's contentions would be well taken. But the endorsement contains this further provision:

''It is also understood and agreed that the policy to which this endorsement is attached, is extended to cover damage to and loss of property (cargo) *while in the possession of and under the control of the assured,* and the Company agrees to pay, within the limits of the policy, any final judgment rendered against the Assured as the result of *such* damage to or loss of property.'' (Italics ours.)

The petition on which the judgment herein was rendered alleges that the property was delivered to and received by the defendant in good condition, but that when defendant delivered said property to the plaintiff it was so badly injured that it died immediately thereafter. The judgment was for damages to property ''while in the possession of and under the control of the assured,'' and therefore was a judgment for loss or damage to property within the terms of said endorsement regardless of what particular vehicle was used in the transportation thereof.

It is next contended by appellant that the allegation of the motion to quash ''that said corporation assignee of said plaintiff was obligated under their policy contract No. M T 102912, issued August 22, 1934, in

favor of Frances E. Roberts, above named defendant, to pay this judgment'' was a mere legal conclusion and was not sufficient to give the court power to stay or quash the execution.

It is undoubtedly true that the above quoted language is in the nature of a legal conclusion. However, after verdict, the petition is entitled to every reasonable intendment which may be drawn from the allegations thereof. This allegation undoubtedly had the effect of advising the appellant that its alleged duty to pay the judgment was predicated upon the terms of the policy of insurance written by the appellant, a specific description of which was included within the allegation. The motion was undoubtedly subject to attack before judgment but we do not believe, under the circumstances in this case, that its defects warrant a reversal of the judgment. [Sec. 1062, R. S. Mo., 1929 (Mo. Stat. Ann., sec. 1062, p. 1352).]

In Eddy Insurance, Inc., v. National Union Fire Ins. Co., *supra* (cited by appellant on another point), the court there said:

''It is fundamental that a judgment should not be reversed except for error materially affecting the merits of the action.''

In Jackson v. Railway Co., 80 Mo. 147, l. c. 150, the court there said:

''Conceding that the implication stated is a conclusion of law, yet the issue raised on the statement of a legal conclusion, which presents the real point in controversy, will be regarded as sufficient after verdict.''

In Slaughter v. Slaughter, 106 Mo. 104, an attack was made upon the petition after verdict, on the ground that certain allegations in the petition were mere legal conclusions. The court there held that:

''The petition is unquestionably defective and was a proper subject for attack before judgment. The statement of the petition that, 'defendant continually abused plaintiff, quarreling at him over various small matters,' it is true is in the nature of a conclusion of law, but if the facts had been stated leading to such conclusion there could be no doubt but what the allegations would amount to an indignity entitling plaintiff to a divorce, for it is hard to conceive a condition more intolerable than that of being constantly abused, etc.'' [Citing Jackson v. Railway, *supra*.]

In Sundmacher v. Lloyd, 135 Mo. 517, l. c. 522, the court, in passing upon ambiguous language in a reply, held:

''We would disregard the statute which commands us not to reverse a judgment unless error has been committed in prejudice of the appealing party, were we to hold defendant was prejudiced by the form of the reply. By going to trial on the merits he waived that matter.''

Upon these authorities we believe said allegation of the motion was sufficient after verdict to sustain the ruling thereon.

It is further contended that the court erred in admitting in evidence the policy, and likewise in admitting rules of the Public Service

Commission. The objection to each of these exhibits was put solely on the ground that "it does not tend to prove or disprove any issue in the cause." The objection in each instance was properly overruled. Clearly, both of these instruments were material to the issues raised in respondent's motion, in that they tended to establish the obligation of the insurer to pay the judgment against respondent.

Further, it seems to be appellant's contention that the motion to quash cannot be sustained unless the proof should establish the fact that the loss was clearly covered under the terms of the policy itself, as distinguished from the endorsement requiring payment to the judgment creditor for any loss of cargo while in the possession or under the control of respondent.

It is true that the last paragraph of the endorsement on the policy provides that the provision for the policy shall "remain in full farce and effect as binding between the Assured and the Company and *if the company pays any loss under the policy which would not have been paid had this endorsement not been attached to the policy* or has resulted directly or indirectly from the violation or breach of any of the provisions therein, the Assured agrees to reimburse the Company to the full extent of such loss." (Italics ours.)

The insurance company, under this endorsement however, assumes the unqualified obligation to pay any judgment rendered against the assured for loss of or damage to cargo caused by any and all motor vehicles operated by the assured pursuant to the certificate of public convenience and necessity issued by the Public Service Commission of Missouri, or while in the possession of and under the control of assured, and further agrees that upon its failure to pay any such final judgment that the judgment creditor may maintain an action in any court of competent jurisdiction to compel such payment.

It is well-established that where a judgment is rendered against a principal and a surety, and the surety pays the judgment, judgment is not necessarily thereby extinguished. If the intention was not to extinguish the judgment, the surety so paying it is entitled to an assignment of such judgment, with all of the rights and liens which attach to it in the hands of the creditor. [Benne v. Schenko, 100 Mo. 250; Burrus v. Cook, 215 Mo. 496, l. c. 513-514; Harper v. Rosenberger, 56 Mo. App. 388, l. c. 392-393; Phelps v. Scott, 30 S. W. (2d) 71, l. c. 75.] From the reasoning in these cases, the same rule would apply to the payment of a judgment by any person secondarily liable, whether he be technically a surety or not.

In the instant case, however, there is a primary obligation to pay such judgment and hence the rule applicable to the right of a person secondarily liable on an obligation to pay a judgment rendered thereon and to have an assignment of same, is not applicable here. It is uniformly held that the payment of a judgment by a party pri-

518

marily liable to pay same extinguishes the judgment. [Phelps v. Scott, *supra*. See also Nelson v. Webster (Nebr.), 68 L. R. A. 513, and extensive notes thereunder.]

It would seem, therefore, that upon a showing that appellant had a primary obligation to pay this judgment, which it assumed in consideration of the payment of the policy premium, then a payment of the judgment under such circumstances would extinguish the judgment. Then, in case the loss did not come within the provisions of the policy itself, the insured, under the provisions of the last paragraph of said endorsement, would have the right to recover of the insured the amount of money so paid in satisfaction of such judgment. That issue, however, cannot be tried out under a motion to quash, but would require a separate and distinct action. [First National Bank of Salem v. Barrett, 94 S. W. (2d) 928; Bank v. Kemble, 61 Mo. App. 215.]

Judgment is affirmed. All concur.